JAMES C. DAVIS, DIRECTOR GENERAL OF RAILROADS, v. N. Y. GULLEY.

(Filed 21 June, 1924.)

**1. Carriers—Railroads—Title—Order, Notify Consignor—Bills of Lading Attached to Draft.**

In a shipment by common carrier, the title is ordinarily in the consignee upon delivery for transportation; and where the shipment is order, notify consignor, and bill of lading is sent through the bank attached to draft, upon the payment of the draft by the consignee and delivery of the bill of lading to him, the title to the shipment is in him.

**2. Same—Vendor and Purchaser—Actions—Shortage in Shipment.**

Where the consignee of an interstate shipment, bill of lading attached to draft, has paid the draft and presents the bill of lading to the carrier, pays the freight, and obtains the shipment, in the carrier's action to recover the proper freight charges as established by the Interstate Commerce Commission, he is liable therefor.

**3. Same — Commerce — Interstate Commerce Commission — Discrimination—Freight Rates—Contract of Carriage.**

The rates established by the Interstate Commerce Commission on interstate shipments are controlling, and to prevent discrimination, and where the carrier has collected a less amount on the shipment from the consignee than that so prescribed, the carrier in its action may recover the difference from the consignee, he being bound by the rates lawfully established.

CIVIL ACTION, heard before *Calvert, J.,* at September Term, 1923, of WAKE. From judgment for plaintiff, defendant appealed.

The following is the "case agreed" on appeal to this Court:

"In the above entitled action it is agreed that the material facts are as follows: That in August, 1919, Dyer & Co., of Kansas City, Mo., sold to the defendant, N. Y. Gulley, a carload of hay to be delivered at Franklinton, N. C., at the price of $37 per ton. On 20 August, 1919, Dyer & Co. shipped a carload of hay from Omaha, Neb., to Franklinton, consigned to Dyer & Co., order notify N. Y. Gulley. That the carload of hay was transported by the railroads at the weight of 21,400 pounds, and freight charged on that basis. At the time of shipment, Dyer & Co. sent a bill to the defendant charging him with 23,260 pounds of hay and deducting for freight charges $127.60. They drew a draft, attached it to the bill of lading, and sent it to the Bank of Wake, Wake Forest. The defendant paid the draft, and thus procured the bill of lading and went to Franklinton to pay the freight. The railroad agent there said the freight was $87.55, which was paid by the defendant and the car unloaded and the hay carefully weighed by the official cotton weigher at Franklinton, and it showed a shortage of 2,500 pounds, which

did not occur on railroad, making a charge for the hay $46.25 too large, while the sum deducted as freight was $40.05 more than was paid by defendant, leaving a balance due the defendant from Dyer & Co. of $6.20. Under these circumstances the defendant made no claim for shortage in hay, fully believing he had paid the freight in full and would lose only the $6.20. This was done 12 September, 1919. About April, 1920, defendant was notified by the railroad agent that a claim was made for $42.84; that the correct freight charges on the car of hay from Omaha, Neb., to Franklinton, N. C., at the time of this shipment, as shown by tariffs on file with the Interstate Commerce Commission, was $127.19, and the war tax on $41.89 amounts to $1.28.

"This defendant thereupon notified Dyer & Company of the situation, and they refused to make good any shortage because of the delay in making claim for same. The defendant denied any liability to the railroad company, and refused to pay claim, and plaintiff began this action.

"Upon the foregoing facts agreed, the plaintiff contends that he is entitled to recover of the defendant the sum of $41.89 and war tax, $1.28, being the difference in the freight paid by the defendant and the correct freight charges, as shown by tariffs on file with the Interstate Commerce Commission. The defendant contends that he is not indebted to the plaintiff in any amount."

The court below rendered the following judgment:

"This cause coming on to be heard, upon case agreed, a jury trial having been waived by plaintiff and defendant, it is now, upon consideration of the facts set forth in said case agreed, ordered and adjudged that the plaintiff recover of the defendant the sum of $42.84, with interest thereon from 13 September, 1919, and the costs of this action, to be taxed by the clerk."

To the foregoing judgment the defendant excepted, assigned error, and appealed to the Supreme Court.

*Murray Allen for plaintiff.*
*J. G. Mills and N. Y. Gulley, in propria persona, for defendants.*

CLARKSON, J. In *Early v. Flour Mills,* 187 N. C., p. 345, it is said: "It is the general rule in mercantile law that the risk of loss follows the title to the property. *Joyce v. Adams,* 8 N. Y., 291; note 26, L. R. A. (N. S.), 10. It is also the general holding that when a seller ships goods 'order notify,' and draws draft for purchase price, with bill of lading attached, the title and right of possession to the property are reserved by the seller until the draft is paid. No title passes to the purchaser, and any loss in transit, as between the buyer and the seller, must

DAVIS *v.* GULLEY.

be borne by the latter. *Collins v. R. R.,* 187 N. C., 141; *Watts v. R. R.,* 183 N. C., 12; *Penniman v. Winder,* 180 N. C., 73; *Richardson v. Woodruff,* 178 N. C., 46; 35 Cyc., 332."

From the agreed state of facts, the hay was shipped to Franklinton, N. C., consigned to Dyer & Company "order notify" N. Y. Gulley. The title to the hay was in Dyer & Company until the defendant paid the draft, with the bill of lading attached, to the Bank of Wake, at Wake Forest. Immediately upon the payment of the draft, he obtained the bill of lading. The title to the hay then passed to the defendant. He became the owner of the hay, subject to the payment of the freight charges. The freight charges, including war tax, was $130.39, and the agent by mistake collected only $87.55 from the defendant. This suit is for the balance of the freight charges, $42.84, due for transportation from Omaha, Neb., to Franklinton, N. C. (The amounts are inaccurately stated in the case agreed, and we make figures to correspond with judgment.) We think the defendant liable for the amount sued for. The agreed case admits that Dyer & Company had deducted the freight charges, $127.60, from defendant's bill for the hay. Between the shipper, Dyer & Company, and the defendant, it is conceded by the record that the defendant was to pay the freight charges.

In *R. R. v. Latham,* 176 N. C., 417, the *syllabus* of the decision is given as follows: "The rates of transportation allowed carriers of freight are those established by the Interstate Commerce Commission, under the Federal statutes as to interstate commerce, and by the State Corporation Commission, under the State statutes as to intrastate commerce, which may not be affected by any agreement to the contrary between the carriers or their agents or employees and the shipper; and, notwithstanding such agreement, the carrier may demand and enforce the rates established by law."

An interstate carrier is not estopped from recovering the balance due for a shipment by the unauthorized act of its agent in quoting an illegal freight rate.

*Hoke, J.* (now C. J.), in *R. R. v. Latham, supra,* at p. 420, said: "It is coming to be more and more recognized that, with a minimum of official interference, a government is required at times to establish regulations to afford its citizens equal opportunity in their industrial and commercial life—a requirement that is nowhere more imperative than in preventing discrimination among the shippers of freight with our public-service companies. These statutes, enacted for this purpose, and the rules and regulations thereunder, designed to effect as far as possible an equal charge for like service among all shippers, permit no deviation by agreement or attempted adjustment of the parties."

DAVIS *v.* GULLEY.

*James C. Davis, as agent, etc., v. R. L. Cornwell,* U. S. Supreme Court Advance Opinions, p. 473 (decided 21 April, 1924). This was an action in a State court of Montana to recover damages for failure to supply the cars. The plaintiff sued on an express contract to furnish them on the day named. It was not shown or contended that the published tariffs governing the contemplated shipment provided in terms for such a contract. *Mr. Justice Brandeis* said: "The obligation of the common carrier implied in the tariff is to use diligence to provide, upon reasonable notice, cars for loading at the time desired. A contract to furnish cars on a day certain imposes a greater obligation than that implied in the tariff. For, under the contract, proof of due diligence would not excuse failure to perform. *Chicago & Alton R. R. Co. v. Kirby,* 225 U. S., 155, settled that a special contract to transport a car by a particular train, or on a particular day, is illegal, when not provided for in the tariff. That the thing contracted for in this case was a service preliminary to the loading is not a difference of legal significance. The contract to supply cars for loading on a day named provides for a special advantage to the particular shipper, as much as a contract to expedite the cars when loaded. It is not necessary to prove that a preference resulted in fact. The assumption by a carrier of the additional obligation was necessarily a preference. *The objection is not only lack of authority in the station agent. The paramount requirement that tariff provisions be strictly adhered to, so that shippers may receive equal treatment, presents an insuperable obstacle to recovery."* (Italics ours.)

*Pittsburgh, etc., R. R. Co. v. Fink,* 250 U. S., 577, we think on "all-fours" with the case at bar. In that case it was held: "Under the Act to Regulate Commerce, it is unlawful for a carrier to accept less than the tariff as compensation for the interstate transportation of goods. A consignee accepting delivery of goods must be presumed to have understood this. The carrier has a lien for the lawful charges until they are tendered or paid, and a consignee who obtains the goods at destination upon payment of less, due to a misunderstanding by himself and the carrier of the rate lawfully applicable, must be deemed to have assumed the obligation of paying the full lawful rate, and is liable to the carrier accordingly. An agreement with the consignor that title to the goods shall not pass to the consignee until delivery cannot alter the situation. Nor can the hardship to the consignee, resulting from his misunderstanding and subsequent change of situation in reliance on it, since the requirements of the statute cannot be avoided by estoppel."

The *Fink case, supra,* is approved in *Louisville & Nashville R. R. Co. v. Central Iron & Coal Co.,* in U. S. Supreme Court Advance Opinions, p. 503 (decided 5 May, 1924), where the whole matter is fully discussed

by *Mr. Justice Brandeis,* and in conclusion the opinion says: "For, under the rule of the *Fink case,* if a shipment is accepted, the consignee becomes liable, as a matter of law, for the full amount of the freight charges, whether they are demanded at the time of delivery or not until later. His liability satisfies the requirements of the Interstate Commerce Act."

The agreed case admits, "And it (the hay) showed a shortage of 2,500 pounds, *which did not occur on railroad,* making a charge for the hay (by the shipper) $46.25 too large," etc. The defendant's remedy is against Dyer & Company, who did not comply with their contract with him and ship the quantity of hay agreed on.

We have carefully considered the case, and can find no error. The judgment below is

Affirmed.