*70
 
 Ruffin, J.
 

 In actions of this kind, and, indeed for torts by misfeasance generally, there seems to be no reason why the damages, assessed, should be nominal only, and not such ■as are commensurate with those sustained, since it must be the purpose of justice and law, to compensate the party injured', when practicable, for the actual loss arising naturally and directly from the wrong. The question, then, is, what loss to the plaintiff was caused by the conduct of the defendant. It was manifestly a real loss, to the amount of the difference in the proceeds of the cotton, if the defendant had, as in duty bound, carried it to the plaintiff’s consignees, to be disposed of under his contemporaneous instructions, to hold it for farther orders, instead of consigning and carrying it to different persons and at a different market. The damages would have been hut nominal, if the cotton had been sent by the plaintiff with orders to his consignee to sell immediately, or, perhaps, without orders, since it happened that it would arrive at each market by the same time, and the price and charges at each were the same. But this cotto-n was sent under orders to the Norfolk factors not to sell on arrival, but to wait for orders, giving as a reason, the plaintiff’s belief, that the price would rise. If it had been duly carried to Norfolk, and the house there had, in violation of their orders, sold immediately, it certainly would have been a breach of duty, [unless in certain excepted eases of the factor being in advance, or under responsibilities for the principal, making a sale necessary,] and the factor would be responsible for the consequences, that is, the loss arising therefrom. If a day for the sale be fixed in the orders, and tlie factor make it before, the rule is, that the principal shall have the market price on that day, if better than that got at the sale;
 
 Brown
 
 v. McGraw, 14 Peters, 479. Eor the owner has the right to control bis own property, and exercise his own judgment as to the market at different periods, and ordering a sale on arrival, or fixing a day certain, is the exercise of his judgment, and ties up the parties to that time, unless the order be subsequently modified. It is a common thing, however, not to designate any certain time of sale,
 
 *71
 
 blit to forward the goods to the factor, so as to have them ready for the market, when the necessities or the jndgment of the owner may require a sale, and that is done by orders to the factors to store and wait for an order to sell; and in such a case, it is clear that the factor is in default if he sell before the order, as he would be if in the former case, he had sold after or before the time designated. There may be more difficulty in ascertaining the loss, as it would not do to allow tire principal an indefinite time to close the transaction, and it would be a vain thing for him to give the order to sell after he knew the sale had been already made. It has, indeed, been decided by the Supreme Court of blew York, that if a factor sell, after instructions not to sell, he is liable in damages for the difference between the price got by him and the highest price the article brought in the market before suit was brought, if the suit was commenced within a reasonable time;
 
 Marfield
 
 v.
 
 Douglass
 
 and
 
 Goodhul,
 
 1 Sanf. Supm. Co. R. 360. This suit was certainly brought within reasonable time, as it was to the first term of the Superior Court of the county, in which the plaintiff lived, after the wrong done, and the writ -was issued on the 12th of August. Certainly the rise after the suit could not be taken into the estimate, as by bringing suit the plaintiff necessarily restricted himself, to the damages which he then alleged he had sustained. But it is not material to consider this point farther, since there was no material variation of price between the 12th of August and the 1st of May, when the plaintiff became fully informed what disposition had been made of his property, by receiving the amount of sales and the nett proceeds from the Petersburg house, and we think every one must admit, that if he is to be compensated at all for his loss, the plaintiff was at least entitled to the price at the time he got the full advice of the sale.
 

 It seems to follow, necessarily, from those positions, that the defendant is liable to the same measure of damages that would have been meted to the bTorforlk factors, had the goods come to their hands, and they had, in disobedience of orders,
 
 *72
 
 made the sale on arrival. Eor the wrongful act of the carrier in not delivering the cotton to those factors, and delivering it to others of their own choosing, at a different place, with orders to sell immediately, or without orders, leaving the factors to their own discretion, instead of that of the owner, has evidently been the direct cause of a loss to the plaintiff, to the amount, at least, for which his own factors would have been liable. It is said, those damages are vindictive, and more than could have been recovered in trover, and therefore, ought not to be given in this action. It is true, that in trover for an actual conversion, by a sale of the thing, the value at the sale is the measure of damages. But that arises from the form of the declaration, which supposes the property to be changed by the sale, and that there the injury and loss to the plaintiff was complete, and it has no application to an action on the case against a common carrier, who tortiously carried goods to a wrong place, and for immediate sale, instead of delivering them at the right place, where they would have been sold at the pleasure, and on the judgment of the owner, at a higher price. The miscarrying, if not willful, must have been the effect of very gross negligence; and in such a case, the carrier, ought, in justice and in commercial policy, to be held responsible for all the natural consequences of his default.
 

 It was also insisted, in the argument, that the plaintiff had sanctioned the disposition made of the cotton by receiving the proceeds from the Petersburg merchants. But he did not receive the money in satisfaction of the wrong done him by the defendant. He took it for the liability of the factors, upon their own acts, after the goods came into their hands ; which he might well do, as he could not have recovered more from them, either for money had and received or in trover. But the liability of the carriers for other, and further damages, for the wrongfully miscarrying of the cotton to a wrong and a bad market, and having it sold at the current price, was not intended to be, and was not affected by the plaintiff’s receipt
 
 *73
 
 of the actual proceeds from men, who, as far as they acted, were innocent of any wrong.
 

 PeR Cueiam, Judgment reversed, and a
 
 venire de novo.