SAMUEL L. COOPER AND WIFE v. SOUTHERN EXPRESS COMPANY.

(Filed 13 May, 1914.)

1. Mental Anguish—Joint Action—Trials—Demurrer.

Where two or several plaintiffs join in their action to recover damages for mental anguish, a demurrer for misjoinder is good, for from the nature of damages of this character the causes are not severable, the parties, as well as the subject-matter, necessarily being separate and distinct.

2. Mental Anguish — Ignorance of Conditions — Trials—Damages—Questions of Law—Courts.

When it is shown that the plaintiff, in an action to recover damages for mental anguish, was not aware or conscious at the time of the facts or circumstances upon which the damages are necessarily measured, a recovery of actual damages thereon will be denied as a matter of law.

3. Mental Anguish — Express Companies — Trials — Negligence — Avoidance of Damages—Extra Expense—Measure of Damages.

The plaintiff sued an express company for damages for mental anguish alleged to have arisen from its neglect to put off a coffin which had been purchased .for the interment of his child, at its destination, and, as the measure of his damages, claimed that he was thereby prevented from burying the child at his family burying-ground, where he desired to bury it, because decomposi-

tion had begun to set in upon the late arrival of the coffin, which the defendant had carried beyond its destination and returned. There was no evidence that he attempted to procure another coffin in time for his purpose, which it appears he could have done, and it is held that the mental anguish did not necessarily result from the defendant's negligence, and it being the plaintiff's duty to have avoided it, under the circumstances, his measure of damages was the additional expense he would have incurred had he otherwise acted.

APPEAL by defendant from *Justice, J.,* at November Term, 1913, of HENDERSON.

*Smith & Shipman for plaintiffs.*
*Staton & Rector and A. B. Andrews, Jr., for defendant.*

CLARK, C. J. This is an action by husband and wife for mental anguish, alleging that by delay of defendant in the delivery of the coffin they were forced to bury their deceased child near the place they were living instead of conveying the remains to the family burying-ground at Pleasant Grove Church near Etowah.

In *Morton v. Telegraph Co.,* 130 N. C., 299, it was held that "One person cannot recover for mental anguish suffered by another; and therefore the husband and wife, suing severally for their own anguish, are different parties, suing upon distinct causes of action. As was said in *Cromartie v. Parker,* 121 N. C., 198, 'as in this case there is not only a misjoinder of distinct causes of action, but also a misjoinder of parties having no community of interests, the action cannot be divided under Code, 272, which permits division only where the causes alone are distinct.' The demurrer should therefore have been sustained and the action dismissed." To the same effect, *Thigpen v. Cotton Mills,* 151 N. C., 97. However, we will pass by this objection, as a demurrer does not seem to have been interposed, and it was waived. *McMillan v. Baxley,* 112 N. C., 578; *Hocutt v. R. R.,* 124 N. C., 216.

Upon the evidence, it appears that the plaintiffs lost an infant child, who lived only half an hour or an hour, on 7 March, 1911; that J. B. Cooper, the father of the male plaintiff, went

down to Hendersonville the next morning (Monday) and purchased a little coffin which he sent up by express to Arden, 10 miles north of Hendersonville and some 4 miles from the home of the plaintiffs, coming up himself on the same train, which left Hendersonville at 10 :30 a. m. and arrived at Arden at 11 a. m. On arriving at Arden he engaged in conversation with some one, and, not presenting the bill of lading, did not notice that the coffin had not been put off until the train had pulled out. He then found the station agent, and there is some conflict between plaintiffs' witnesses whether J. B. Cooper tried in time to get the express agent to wire to Skyland, a station 2 miles further north, to have the coffin put off there where he might have gotten it, or endeavored to get in communication with his lawyer in Hendersonville. It appears, however, that another train left Hendersonville going north at 1 p. m. and if he had wired for another coffin to be shipped by that train it would have gotten to Arden at 1 :30 p. m., and could have been taken out to the residence of the plaintiffs by 2 :30, which would have given time to have taken the same 4 :12 p. m. train (Monday) going south, as they had intended, so as to take the body to Etowah, near which place it was the intention of the father to bury the child. But neither of these steps being taken, the coffin got back to Arden on the 4 :12 p. m. train Monday, and reached the home of the plaintiffs an hour later.

The testimony of the plaintiff's father is that it was 17 miles through the country by which the body might have been taken to Pleasant Grove Church near Etowah next morning (Tuesday). But he says the body began to show signs of decomposition, though this was in March and the weather "reasonably cold," and hence they buried it at the church near the residence of the plaintiffs. It appeared further in the evidence that such burial took place at 12 o'clock Tuesday, by which time, if they had started with the body the same morning, they could have reached the burial-ground near Etowah.

It is also in evidence that the mother was in such condition that she did not know of this delay nor of the fact that the burial was intended to be at Pleasant Grove Church or that the body was to be buried where it was.

Upon the plaintiff's own testimony, therefore, she could not have suffered any mental anguish during the delay, or from disappointment which she did not know, and the motion for a nonsuit as to her should have been granted.

As to the father, when he found that the coffin bought by J. B. Cooper in Hendersonville was not delivered at Arden at the time he contends it should have been (at 11 a. m.), it was his duty to have taken such steps to prevent loss and damage as lay in his power; but, according to the evidence, he did not make any effort at all to procure another coffin in time from Hendersonville or take any other steps whatever to supply the failure to receive the coffin. It was error, therefore, in the court to refuse the following prayer: "The only damages the plaintiffs are entitled to recover in this action, if the jury should find that the defendant was negligent in making the delivery of said coffin, is only such an amount as plaintiff would have had to expend in procuring another coffin in time to have the remains of the said child shipped to Etowah on the same train on which it is alleged they would have shipped the little body if the coffin bought by J. B. Cooper in Hendersonville had been delivered at Arden at the time the plaintiffs contend it should have been, or such an amount as plaintiffs would have had to incur in procuring another coffin after it was ascertained that the one J. B. Cooper bought had not been delivered at the time it is contended by plaintiff that it should have been, and the expenses of having the remains of the plaintiffs' deceased infant, and their relatives who were at their home at Arden, conveyed by private conveyance from their said place of residence to the graveyard or burial-ground in which plaintiffs contend they desired to have their deceased infant buried, and no more."

The evidence is that it was half an hour by train from Hendersonville to Arden and one hour for the trip from Arden to plaintiffs' residence 4 miles away. If, therefore, the plaintiffs or J. B. Cooper as agent had wired to Hendersonville at 11 o'clock or later for another coffin, it could have left on the 1 p. m. train, reaching plaintiffs' home at 2:30, giving time for the

party with the coffin to reach Arden and take the same 4:12 p. m. train for Etowah, which it is testified that they intended to have taken if the coffin had been delivered by the 11 o'clock train. The prayer, therefore, giving the plaintiffs, in the alternative after failing to wire for another coffin to come by 1 p. m. train, the expenses of the conveyances and party through the country next morning, 17 miles, was as liberal as could be claimed by the plaintiffs. That the little body was buried at the church near their residence, and not at the contemplated spot near Etowah, was the fault of the male plaintiff, since he could by taking proper steps have made the burial at Pleasant Grove, notwithstanding the failure of the defendant to deliver the coffin as it should have done by the 11 a. m. train. Mental anguish could have been avoided, for it was not the necessary consequence of defendant's negligence.

Error.