NORFOLK SOUTHERN RAILROAD COMPANY v. THE ARMFIELD COMPANY.

(Filed 29 April, 1925.)

1. **Carriers—Commerce—Order Notify Shipments—Delivery Without Requiring Bill of Lading—Waiver—Title.**

The ruling of the Interstate Commerce Commission that the carrier must demand the surrender or possession of the bill of lading of an order notify interstate shipment in accordance with its express terms, before delivering the shipment to the person therein designated, must be observed, and where the delivery is made contrary to this requirement, the consignee acquires no title thereto, and the custom of the dealings between the parties cannot waive this requirement.

2. **Same—Actions—Contracts—Trover and Conversion.**

Where the terminal carrier's delivering agent on an interstate carload shipment has delivered the shipment to the person to be notified without requiring the surrender of the order notify bill of lading, and the carrier has paid the shipper for the goods thus delivered, whether in an action upon the contract assigned to it, or in wrongful conversion, the carrier may maintain its action against the consignee of the shipment, though the latter may have bought through a third person whom he has paid with knowledge that the shipment was upon an order notify bill of lading subject to the ruling of the Interstate Commerce Commission in the respect stated.

CIVIL ACTION tried by *Calvert, J.,* and a jury at the October Term, 1924, of CUMBERLAND.

His Honor instructed the jury upon the evidence to answer the issues as they appear of record:

1. Was the shipment of oats described in the complaint transported from Nashville, Tennessee, to Fayetteville, North Carolina, on an order notify bill of lading? Answer: Yes.

2. Was the shipment of oats described in the bill of lading delivered by the agent of the Norfolk Southern Railroad Company (the ultimate

carrier to destination) to the defendant Armfield Company at Fayette-ville, North Carolina, without requiring the surrender of the bill of lading? Answer: Yes.

3. Is the defendant Armfield Company indebted to plaintiff as alleged in the complaint, and if so, in what sum? Answer: Nothing.

The plaintiff appealed from a judgment in favor of the defendant.

*W. B. Rodman and Robinson & Robinson for plaintiff.*
*Cook & Cook and Nimocks & Nimocks for defendant.*

ADAMS, J. This action was brought to recover the value of a carload of oats shipped from West Nashville, Tennessee, to Fayetteville, North Carolina, and delivered by the plaintiff to the defendant, the Armfield Company, without requiring the production of the bill of lading. The defendant gave its order to D. H. Dixon, a wholesale distributor in Goldsboro. Thereafter, on 2 February, 1923, presumably upon Dixon's order, the Tennessee-Oklahoma Grain Company put 300 sacks of oats in a car at West Nashville and received from the Nashville, Chatta-nooga & St. Louis Railway Company a bill of lading which provided, "The surrender of this original order bill of lading properly endorsed shall be required before the delivery of the property." On the same day (2 February) the Grain Company drew a sight draft on D. H. Dixon in the sum of $1,000.65 (the purchase price of the oats) in favor of the Wayne National Bank of Goldsboro, and attaching the endorsed bill of lading for delivery upon payment of the draft, mailed the papers to the bank. The bank received the papers on 5 February, held them until 12 April, and then returned them to the shipper. The draft was never paid. On 26 January, 1923, D. H. Dixon deposited in the Wayne National Bank his draft on the Armfield Company for $1,091.10, for which the bank gave him credit. The draft was for-warded to the Cumberland Savings and Trust Company, of Fayette-ville, and was paid by remittance to the sending bank on 27 February. About two weeks theretofore, on 13 February, 1923, the plaintiff's agent upon the order of Dixon, without demanding the bill of lading, delivered the oats to the Armfield Company, who knew that the ship-ment had been made on a uniform order bill of lading. Record, p. 63.

The suit was instituted 28 July, 1923. The plaintiff on 14 Febru-ary, 1924, paid the grain company the amount of its original draft on Dixon and took an assignment of the bill of lading, and at the March Term, 1924, amended its complaint for the purpose of setting up the title thus acquired.

The question is whether the judge erred in directing a verdict upon the evidence. Of course the shipment from West Nashville, Tennessee,

to Fayetteville, North Carolina, constituted interstate commerce. *Addyston Co. v. U. S.,* 175 U. S., 210, 241, 44 Law Ed., 136, 147; *Rosenberger v. Pac. Ex. Co.,* 241 U. S., 48, 60 Law Ed., 880; *Gaddy v. R. R.,* 175 N. C., 515; *Southwell v. R. R., ante,* 417. The defendant had been dealing with Dixon for about two years, and had received similar shipments from the plaintiff without producing the order bill of lading. In June, 1922, the Interstate Commerce Commission notified the plaintiff and other carriers that the clause requiring the surrender of the original order bill of lading must be complied with, and that the practice of delivering shipments without calling for such bills must cease.

There is evidence tending to show that the plaintiff's agents were instructed as to this notice, and that the agent at Fayetteville delivered the shipment in question in breach of the plaintiff's instructions. In addition, the schedule of the plaintiff's tariffs, certified by the Interstate Commerce Commission, provides that unless lost or delayed the carrier's original order bill of lading properly endorsed must be surrendered before the property is delivered; and where the title is retained in this way the carrier as a general rule cannot rightfully deliver the goods until the bill of lading is produced. *Sloan v. R. R.,* 126 N. C., 487; *Bank v. R. R.,* 153 N. C., 346; *Killingsworth v. R. R.,* 171 N. C., 47; *Richardson v. Woodruff,* 178 N. C., 46; *Penniman v. Winder,* 180 N. C., 73; *Watts v. R. R.,* 183 N. C., 12; *Collins v. R. R.,* 187 N. C., 141; *Early v. Flour Mills, ibid.,* 344; *Davis v. Gulley,* 188 N. C., 80; *R. R. v. Bank,* 207 U. S., 270, 52 Law Ed., 201.

The defendant contends that it bought the oats from Dixon and had no dealing with the Tennessee-Oklahoma Grain Company; but the shipment nevertheless was made upon a bill of lading by which the title was retained for the benefit of the grain company, the shipper, and its assigns. The defendant knew this. D. M. Armfield, testifying on its behalf to this effect, said that the bill of lading was not surrendered to the plaintiff when the oats were delivered; in fact the defendant never had the bill of lading, and never tried to get it.

If the jury should find from the evidence that the shipment was made upon an order bill prescribed by the Interstate Commerce Commission, having upon its face a requirement that the bill of lading properly endorsed should be produced when the property was delivered, and the plaintiff's agent delivered the oats to the defendant without demanding the bill of lading, they should then find that no title to the oats passed to the defendant. Under these circumstances what were the plaintiff's legal rights as against the defendant? There is authority for the position that the plaintiff, after taking the transfer of the bill of lading from the shipper, had a cause of action in contract against the defendant, and without the bill of lading under the given circumstances had

a cause of action for conversion. The subject is discussed in *R. R. v. Freedman,* 133 N. E. (Mass.), 101. There it appeared, as in the case before us, that the goods had been shipped under a uniform order bill of lading and wrongfully delivered. The carrier brought suit for the conversion of the goods, and after taking an assignment of the bill of lading brought a second suit in contract. The actions were tried together and resulted in each case in a verdict for the plaintiff. Only one recovery was allowed, but the Supreme Judicial Court of Massachusetts held that the alleged conversion was based on the wrongful interference with the plaintiff's possessory right, while the claim in contract was upon an agreement between the defendant and the plaintiff's assignor.

In other jurisdictions also it has been held under analogous circumstances that without regard to the assignment of the bill of lading the carrier as bailee has a cause of action in trover against the person to whom the goods are delivered, where with knowledge of the conditions such person receives them without presenting the order bill of lading. *Chamberlain v. Torgorm,* 48 Fed., 584; *Tedford Co. v. R. R.,* 172 S. W. (Ark.), 1006; *R. R. v. McDougald,* 199 N. W. (Wis.), 68; *Mosher Co. v. R. R.,* 259 S. W. (Tex.), 253; *In re Bunch Co.,* 180 Fed., 519, 531; *Johnson, etc., Co. v. R. R.,* 34 So. (Miss.), 357; *R. R. v. McKay,* 182 S. W. (Tenn.), 585.

It is contended that a long course of dealing between the parties established a custom and well known usage by which the plaintiff had repeatedly delivered goods shipped on an "order notify" without requiring the production of the bill of lading. Moreover, it is insisted, the plaintiff was not only negligent in permitting such a custom, but is bound by the usage, by the misfeasance of its agent, and by its own conduct, and is therefore estopped to maintain the present action.

In our opinion the principles relied on by the defendant are not applicable here. This was an interstate shipment. We must consider not only the bill of lading as evidence of the contract; we must consider the plaintiff's tariffs and the orders of the Interstate Commerce Commission regulating both the rates for transportation and the terms of delivery. These include requirements which the plaintiff must observe and may not waive. In *R. R. v. Leatherwood,* 250 U. S., 479, 63 Law Ed., 1096, it is said: "The bill of lading given by the initial carrier embodies the contract for transportation from point of origin to destination; and its terms in respect to conditions of liability are binding upon the shipper and upon all connecting carriers, just as a rate properly filed by the initial carrier is binding upon them. Each has in effect the force of a statute, of which all affected must take notice. That a carrier cannot be prevented by estoppel or otherwise

from taking advantage of the lawful rate properly filed under the Interstate Commerce Act is well settled. A carrier has, for instance, been permitted to collect the legal rate, although it had quoted a lower rate, and the shipper was ignorant of the fact that it was not the legal rate. *Texas & P. R. Co. v. Mugg,* 202 U. S., 242, 50 L. Ed., 1011, 26 Sup. Ct. Rep., 628; *Illinois C. R. Co. v. Henderson Elevator Co.,* 226 U. S., 441, 57 L. Ed., 29, 33 Sup. Ct. Rep., 176; *Louisville & Nashville R. Co. v. Maxwell,* 237 U. S., 94, 59 L. Ed., 853, L. R. A., 1915E, 665, P. U. R., 1915C, 300, 35 Sup. Ct. Rep., 494; *Missouri, K. & T. R. Co. v. Schnoutz,* 245 U. S., 641, 62 L. Ed., 527, 38 Sup. Ct. Rep., 221 (per curiam)."

If the plaintiff had accepted in payment of freight a rate lower than the published tariffs required it could none the less have collected the legal rate, because the duty of collecting the legal rate is imposed by law. Likewise, if in the instant case the plaintiff's agent released the shipment in question (especially in breach of his instructions), without demanding the bill of lading, whereby neither the title nor the right of possession vested in the defendant, the unlawful delivery of the goods, according to the cited authorities, did not work an estoppel against the plaintiff, whether asserting its possessory right as bailee (the title remaining in the consignor) or asserting its title to the property under an assignment of the bill of lading.

The amendment of the complaint seems to have been made without objection, and to have been treated as if incorporated as an original cause of action; at any rate there was no exception to the amendment or to the presentation in this action of the contentions which it raised.

We think his Honor inadvertently instructed the jury to answer the third issue in favor of the defendant if they found the facts as shown by the testimony, and for this reason the plaintiff is entitled to a

New trial.