GEORGE W. OLVANY and Another, as Trustee under the Last Will and Testament of ANTONIN CHAPAL, Deceased, Plaintiffs, *v.* NYAMCO ASSOCIATES, INC., Defendant.

Municipal Court of New York, Borough of Manhattan, First District, March 19, 1935.

*Olvany, Eisner & Donnelly* · [*Merwin Lewis* of counsel], for the plaintiffs.

*Harry Rodwin* [*Harry Rodwin, Henry Spitz* and *Joseph L. Kugel* of counsel], for the defendant.

GENUNG, J. The facts in this case have been stipulated.

The New York Title and Mortgage Company owned a mortgage covering premises 407 West One Hundred and Forty-fifth street, New York city. It assigned that mortgage to plaintiffs, at the same time executing its guaranty for the payment of the principal and interest thereof. The agreement of guaranty made the title company "irrevocably the agent" of the plaintiffs and the title company was bound "to require the owner [of the fee] to pay all fire insurance premiums, taxes, assessments and water rates," together, of course, with the interest and principal of the mortgage at the due dates. Plaintiffs were required "To permit this Company to collect all interest and the principal secured by said bond and mortgage, and to refrain from collecting any part of said interest or of the principal secured by said bond and mortgage except through this company," and to allow the company "to enforce payment" of any sums which may become due under the bond and mortgage.

On August 1, 1932, the fee owner defaulted in the payment of interest in the sum of $1,212, and the title company, pursuant to its guaranty, paid plaintiffs that sum. On September 1, 1932, the title company procured from the owner of the fee an assignment of the rents of said premises, the agreement reciting the defaults in the payment of interest and installment, taxes, water charges and assessments, said assignment being based upon the provisions in the mortgage assigning the rents in the event of a default. The title company, however, did not take the assignment in its own name but in the name of the defendant, its "wholly owned and controlled subsidiary." Defendant at all times knew and was aware of the contract of guaranty and of all of its terms.

At the time of the execution of the assignment of rents, taxes for the year 1931 amounting to $1,768 and for the first half of 1932 amounting to $830 were unpaid; and those taxes (and others) are still unpaid.

Defendant employed an agent to manage the premises, collected the rents to October 23, 1933, and during such period paid therefrom the expenses of maintenance and operation of the property together with the sum of $347.95 for assessments and a water bill.

In October and November, 1932, defendant reported to the title company a balance of $461.07 in the assignment of rents account and the title company directed defendant to turn over to the title company such balance " on account of the interest advance of $1,212 " made by the title company to plaintiffs on August 1, 1932. Defendant complied with such direction although the taxes of 1931 and 1932 were still unpaid.

The fee owner then defaulted in the payment of the interest due August 1, 1933, and the title company also failed to pay such interest to plaintiffs. On August 4, 1933, the title company was placed in rehabilitation and on October 23, 1933, it delivered to plaintiffs the assignment of rents and turned over to plaintiffs the net sum of $1,400.11 received by the title company from defendant but refused to turn over the $461.07 which it claimed had been paid it on account of its advance of interest.

Plaintiffs now seek such sum from the defendant. Defendant denies any liability to plaintiffs and seeks to recover from plaintiffs the sum of seventy-nine dollars and eighty-eight cents representing bills incurred by defendant during its operation of the premises and paid by it subsequent to plaintiffs' receipt of the assignment of rents.

The title company would have no right to withhold the amount now claimed by plaintiffs. " Taxes are a first lien and penalties accumulate rapidly for non-payment. The company could not * * *, after it had advanced to the mortgagee the * * * interest due * * *, take an assignment of rents to reimburse itself in the face of a year's tax defaults." (*Matter of People* [*Lawyers Title & Guar. Co.*], 265 N. Y. 20, 27.) The taxes should have been paid before the title company " reimbursed itself for interest money paid out on its contract." (*Matter of People* [*N. Y. Title & Mortgage Co.*], 265 N. Y. 30, 36.)

Defendant claims that there is no privity between itself and plaintiffs; that the title company as plaintiffs' agent could not delegate its authority and hence that defendant is not liable.

The defendant is a " wholly owned and controlled subsidiary " of the title company and acted with full notice of all the facts. While it is a separate entity (*Brooklyn Savings Bank* v. *Wechsler Estate*, 259 N. Y. 9), " though juridically there is no unity between the corporation and its sole stockholder, the law should not entirely disregard the factual connection between the two." (*Rapid Transit*

*Subway Constr. Co.* v. *City of New York*, 259 N. Y. 472, 491.) The test should be that of honesty and justice (*Berkey* v. *Third Ave. R. Co.*, 244 N. Y. 84, 85) " in order that unjust enrichment at the expense of a third party may be avoided." (*Rapid Transit Subway Constr. Co.* v. *City of New York, supra.*)

In *Prudential Ins. Co.* v. *Liberdar Holding Corp.* (72 F. [2d] 395) it was said: " But the relations between the company and the defendants forbid any such immunity; they were not ordinary mortgagors. We will indeed treat them as juristic persons, independent of the company, quite as though they were natural persons. Nevertheless they were completely subservient to it, just as natural persons might have been. * * * They had made themselves coadventurers with the company * * * and if the company wrongfully failed to sequester the rents upon defaulted mortgages, they could not stand upon the point that as mortgagors they might withhold the profits until the mortgagee had secured possession *in invitum*. Thus they were charged with the same fiduciary relation to the rents as the company itself; as creatures of the holder's agent, they became themselves agents of the holders. * * * they * * * received the rents in trust."

Defendant knew, of course, that the assignment of rents was for the benefit of the plaintiffs herein; it also is chargeable with the knowledge that the title company was not entitled to reimbursement for the interest advanced under the contract while taxes were unpaid and penalties thereon accumulating.

As a general rule an agent is not liable to third persons for omission or neglect of duty (*Colvin* v. *Holbrook*, 2 N. Y. 126), but he is liable for misfeasance (*Crane* v. *Onderdonk*, 67 Barb. 47).

" Every person is liable who personally or by agent commits an act of conversion or who participates by instigating, aiding or assisting another. An agent or servant who converts the property of a third person is liable for such conversion, and it is no defense if his acts were committed in pursuance of his employment or for the benefit of his principal or master, though the servant or agent acted under a *bona fide* belief that his master or principal was the owner of the property." (*Passaic Falls T. Co.* v. *Villeneuve-Pohl Corp.*, 169 App. Div. 727, 729.)

In the instant case, defendant, knowing that the proceeds of the collections belonged to plaintiffs and knowing of the title company's intent to retain moneys to reimburse itself, nevertheless turned those moneys over and hence is liable to plaintiffs.

Defendant, however, is entitled to set off the amount of its disbursements for the operation of the premises. Those debts were incurred while it was in possession for the benefit of the plaintiffs and

the payment thereof, although after the time of the transfer of the assignment, was not voluntary in the sense that would deprive it of its right of reimbursement.

Plaintiffs are entitled to judgment against defendant for the moneys paid by the defendant to the title company, viz., $461.07, less defendant's disbursements of $79.88.

Judgment for plaintiff for $381.19.