T. G. GRIGGS, OTIS C. BRIGMAN, AND ANDREW D. JORDAN, TRADING AS T. G. GRIGGS TRUCKING COMPANY, v. STOKER SERVICE COMPANY, INC., AND YORK-SHIPLEY, INC.

(Filed 15 December, 1948.)

**1. Pleadings § 5—**

The fact that plaintiffs make no specific demand for judgment against one of defendants does not preclude recovery against such defendant when the facts alleged are sufficient to support recovery and there is a general prayer for relief, since the right to recover is not dependent upon the prayer for relief but upon the allegations and proof.

**2. Carriers § 14—**

Where, in making a settlement with the purchaser after wrongful delivery of the goods to him by the carrier, the seller contracts with the purchaser to pay the freight charges, the carrier may recover the charges from the seller on the contract.

**3. Carriers § 9—**

A bill of lading is both a receipt and a contract to transport and to deliver the goods as therein stipulated.

**4. Carriers § 14—**

Under bills of lading conforming to the Federal Act and regulations of the Interstate Commerce Commission, 49 U.S.C.A. 81-124, the shipper is liable to the carrier for freight charges unless it signs the non-recourse statement on the face of the bill directing the carrier not to make delivery without payment of freight.

**5. Same—**

Where, after delivery by the carrier to the purchaser without the surrender of the bill of lading, the seller accepts from the purchaser full payment for the article covered by the bill of lading, the seller by accepting the benefits of the wrongful delivery is estopped to deny liability to the carrier for the freight charges.

**6. Carriers § 12½—**

It is the duty of a common carrier not only to safely transport goods entrusted to it but also to deliver them to the party designated by the terms of the shipment, or to his order, at the place of destination, and when the carrier, contrary to the terms of shipment, delivers the goods without surrender of the bill of lading, the delivery is wrongful and the carrier becomes liable for any loss which the shipper sustains thereby. The fact that the bill of lading contains direction to notify the purchaser at the place or destination does not affect the liability of the carrier for wrongful delivery.

**7. Same—**

Where the carrier delivers the goods without surrender of the bills of lading properly endorsed as required by the contract, the shipper may treat such wrongful delivery as a conversion of the property by the carrier and sue the carrier for the full value of the goods, or it may repossess the goods and recover from the carrier the amount expended in such repossession as damages proximately resulting from the wrongful delivery.

**8. Same—**

A shipper may ratify the wrongful delivery of goods by the carrier, but what constitutes a ratification depends upon the facts of each particular case and the burden is on the carrier to show a ratification by the shipper with full knowledge of all material facts.

**9. Same—**

The shipper made twelve separate and unrelated shipments under twelve separate and unrelated bills of lading. In each case the carrier delivered the goods without surrender of the original bills of lading as required by

the contract. Thereafter the shipper accepted full payment for the articles covered by three of the bills of lading. *Held:* The act of the shipper in ratifying the wrongful delivery under the three bills of lading neither compels nor justifies an inference that he thereby intended to ratify the other wrongful deliveries.

**10. Same—**

Evidence tending to show that after wrongful delivery of articles by the carrier without the surrender of the original bills of lading as required by the contract, the shipper accepted full payment of certain items from the person to whom wrongful delivery was made, and repossessed the other items, *held* not to compel the conclusion as a matter of law that the shipper ratified the wrongful delivery, but to the contrary, is sufficient to support the court's finding that the acts of the shipper did not constitute a ratification, since such acts are consonant with intention on the part of the shipper merely to minimize the loss.

**11. Appeal and Error § 40d—**

In a trial by the court under agreement of the parties, G.S. 1-184. the findings of fact of the court based upon the evidence have the same force and effect as a verdict of the jury.

APPEALS by plaintiffs and by the defendant, York-Shipley, Inc., from *Coggin, Special Judge,* at the June Term, 1948, of MECKLENBURG.

To clarify the controversy, the undisputed events preceding the litigation will be stated at the outset.

The plaintiffs, T. G. Griggs, Otis C. Brigman, and Andrew D. Jordan, reside at Ruby, South Carolina. As co-partners under the name of Griggs Trucking Company, they are engaged in the transportation of property in interstate commerce for compensation as common carriers by motor vehicle under the Federal Motor Carriers Act. The defendant, York-Shipley, Inc., a corporation doing business at York, Pennsylvania, manufactures and wholesales heating equipment, and is hereafter designated as York-Shipley for convenience of description. The defendant, Stoker Service Company, Inc., is a corporation engaged in retailing and installing heating equipment in a territory centering at Charlotte, North Carolina, and is hereafter called Stoker Service for ease of narration.

Between 7 January, 1947, and 7 February, 1947, York-Shipley made twelve shipments of heating equipment from York, Pennsylvania, to Charlotte, North Carolina, upon motor trucks operated by plaintiffs. The shipments were consigned to the order of York-Shipley, and were made on uniform order bills of lading. Each bill of lading contained the direction "Notify Stoker Service Co., Inc., at 1444 S. Tryon Street, Charlotte, North Carolina," and the provision "The surrender of the original order bill of lading properly indorsed shall be required before the delivery of the property." The freight charges on the twelve shipments amounted to $890.13.

Section 7 of each bill of lading provided that the consignor should be "liable for the freight and all other lawful charges," unless the consignor directed that the shipment should "be delivered to the consignee without recourse on the consignor" by signing a statement on the face of the bill in these words: "The carrier shall not make delivery of this shipment without payment of freight and all other charges." The defendant, York-Shipley, did not sign such statements on any of the bills of lading.

As shipments were made, drafts for the sale prices were drawn upon Stoker Service by York-Shipley, and were forwarded with the bills of lading attached to banks in Charlotte for collection. These drafts totaled $21,925.98.

Stoker Service never paid the drafts or obtained the bills of lading. When the shipments arrived at Charlotte, the plaintiffs delivered them to Stoker Service without collecting the freight charges and without demanding the production and surrender of the bills of lading.

A few days later, to wit, on 14 February, 1947, York-Shipley and Stoker Service entered into a written contract concerning these matters without notice to the plaintiffs. Under this agreement, Stoker Service relinquished to York-Shipley at the place of business of the former in Charlotte all of the equipment included in the twelve shipments except four items retained by it, and paid York-Shipley for such four items the aggregate sale price of $3,842.79 designated therefor in the appropriate drafts; and York-Shipley released Stoker Service of "all obligation . . . in connection with the bank drafts drawn by York-Shipley, Inc., on the Stoker Service Company" and agreed to be "responsible for the payment of all unpaid freight . . . charges" on all of the property, except the four items kept by Stoker Service. The items retained by Stoker Service were covered by four of the bills of lading, and practically all of the equipment repossessed by York-Shipley was embraced by the other eight.

The plaintiffs began this action by suing Stoker Service for the freight charges on all twelve shipments. Stoker Service thereupon procured an order making York-Shipley a party defendant, and filed an answer praying that it be exonerated from liability and that York-Shipley be adjudged legally accountable to plaintiffs for the transportation charges. The action was nonsuited on the trial as to Stoker Service, and no appeal has been prosecuted from this ruling. In consequence, this Court is concerned only with the conflictive claims of the plaintiffs and York-Shipley.

After York-Shipley became a party, the plaintiffs filed a somewhat informal pleading in which they allege sufficient facts to show a right on their part to recover the freight charges of York-Shipley in its capacity as consignor and by virtue of its contract of 14 February, 1947, with Stoker Service. This pleading does not demand judgment against York-

Shipley for the freight charges, but it does pray "for such relief as the plaintiffs are entitled to in the premises." York-Shipley answered, admitting it was bound by its contract with Stoker Service. But it denied liability for the transportation charges and asserted a counterclaim against plaintiffs for breaches of the contracts of carriage because of their delivery of the several shipments to Stoker Service without production and surrender of the bills of lading. Plaintiffs replied, alleging that the supposed misdelivery had been previously authorized by York-Shipley and had been subsequently ratified by York-Shipley by its contract of 14 February, 1947, with Stoker Service.

Pursuant to the written consent of the parties filed with the Clerk, the action was tried by Judge Coggin without a jury under G.S. 1-184. The court made findings of fact on evidence properly presented conforming to the undisputed matters hereinbefore set out.

In addition, the court made these findings of fact adverse to the plaintiffs, to wit: (1) That York-Shipley did not authorize plaintiffs to deliver any of the shipments to Stoker Service without production and surrender of the bills of lading; (2) that York-Shipley did not ratify the wrongful delivery of the property repossessed by it or waive its rights against the plaintiffs therefor by its contract of 14 February, 1947, with Stoker Service; and (3) that York-Shipley entered into such a contract and actually expended $805.47 reclaiming the property repossessed by it thereunder in a reasonable effort to avoid or minimize the damaging effects of the wrongful delivery of the shipments to Stoker Service. These findings were based in part upon evidence indicating that Stoker Service professed a financial inability to pay for the equipment in its entirety. The plaintiffs did not except to these findings, which were supported by testimony on the trial.

York-Shipley contended that the pecuniary losses resulting to it from the misdelivery of its property exceeded the expenses of $805.47 set out above, and that it was entitled to recover an additional $943.85 on account of salaries and expense accounts which it allegedly paid to some of its agents while they were negotiating the contract of 14 February, 1947, and repossessing the heating equipment thereunder. But the testimony presented by York-Shipley to establish this contention did not prove convincing to the court, which found on the entire evidence that the claimed loss of $943.85 "did not result from . . . acts of the plaintiffs." York-Shipley excepted to this finding.

After making its findings of fact and drawing conclusions of law therefrom, the court "decreed that the plaintiffs have and recover of the defendant York-Shipley, Inc., the sum of $890.13, and that the defendant York-Shipley, Inc., have and recover of the plaintiffs the sum of

$805.47, and that the defendant York-Shipley, Inc., be taxed with the costs of this action."

The plaintiffs and York-Shipley took separate appeals from this judgment to this Court.

*M. K. Harrill and James E. Leppard for the plaintiffs, appellants and appellees.*

*Covington & Lobdell for defendant York-Shipley, Inc., appellant and appellee.*

ERVIN, J.  The defendant, York-Shipley, asserts on its appeal by appropriate assignments of error that the pleadings of the plaintiffs do not state a cause of action against it for recovery of the freight charges, and that by reason thereof the court erred in concluding and adjudging that it is liable to plaintiffs for the same.

The pleadings of the plaintiffs are somewhat informal and do not contain any specific demand for judgment against the defendant, York-Shipley, for the amount of the freight charges.  In consequence, they fall short of the standard of good pleading under G.S. 1-122, which clearly contemplates that a plaintiff should set forth in his complaint a demand for the relief to which he supposes himself entitled.  Notwithstanding this statute, however, the decisions have consistently followed the rule that under the code of civil procedure the relief to be granted in an action does not depend upon that asked for in the complaint, but upon whether the matters alleged and proved entitle the complaining party to the relief granted, and this is so in the absence of any prayer for relief.  *Bryan v. Canady,* 169 N. C. 579, 86 S. E. 584; *McNeill v. Hodges,* 105 N. C. 52, 11 S. E. 265; *Knight v. Houghtalling,* 85 N. C. 17.  As *Chief Justice Merrimon* said in *Presson v. Boone,* 108 N. C. 79, 12 S. E. 897: "When the cause of action appears sufficiently from the complaint, though informally alleged, and the case is tried upon its merits, the court ought to enter such judgment, as the pleadings, the admissions of fact, the findings of fact in some cases by the court or a referee, or the verdict of a jury upon issues submitted to them, warrant, without regard to an imperfect or improper demand for judgment in the complaint or other pleadings, or whether there be any formal demand therefor.  The merits of the matter litigated and settled appearing, the law at once suggests the proper judgment to be given.  While it is far better and very desirable that the pleadings shall be directly pertinent, precise and orderly, still when they can be upheld as sufficient, this must be done, if to do so works no injustice to a party.  This is the spirit and purpose of the present method of civil procedure."

These remarks apply with peculiar force to the case at bar. When the pleadings of the plaintiffs are construed with a proper degree of liberality, they sufficiently allege all facts necessary to show the right of the plaintiffs to recover the freight charges from York-Shipley, and contain a general prayer "for such relief as the plaintiffs are entitled to in the premises." In addition, the record makes it plain that the plaintiffs are entitled to their judgment against York-Shipley for the freight charges. As a matter of fact, liability for such charges on the equipment repossessed by York-Shipley from Stoker Service may be predicated solely upon the express admission of York-Shipley that it is bound by the terms of the contract of 14 February, 1947, making it "responsible for the payment of all unpaid freight or transportation charges" on all of the property included in the twelve shipments "with the exception of the four items" retained by Stoker Service. Other considerations compel the adjudication that York-Shipley is acountable to plaintiffs for the freight charges on these four items.

A bill of lading is said to be both a contract and a receipt. It is a receipt for the goods shipped, and a contract to transport and deliver the same as therein stipulated. *Aman v. Railroad,* 179 N. C. 310, 102 S. E. 392; *St. Louis, I. M. & S. R. Co. v. Knight,* 122 U. S. 79, 7 S. Ct. 1132, 30 L. Ed. 1077.

The shipments here moved in interstate commerce under uniform order bills of lading conforming to the Federal Bill of Lading Act and the regulations of the Interstate Commerce Commission. 49 U. S. C. A. 81-124. The contract embodied in each of these bills of lading provided in express terms that the consignor should "be liable for the freight and all other lawful charges," unless it relieved itself of such liability by signing the non-recourse statement on the face of the bill directing the carrier not to make "delivery of this shipment without payment of freight and all other lawful charges." York-Shipley did not sign the non-recourse statement on any of the bills of lading. It is well settled that "under these provisions if the non-recourse clause is not signed by the consignor, he remains liable to the carrier for all lawful charges." *Illinois Steel Co. v. Baltimore & Ohio R. Co.,* 320 U. S. 508, 64 S. Ct. 322, 88 L. Ed. 259. See, also, these cases: *Pennsylvania R. Co. v. Marcelleti,* 256 Mich. 411, 240 N. W. 4, 78 A. L. R. 923; *Western Maryland R. Co. v. Cross,* 96 W. Va. 666, 123 S. E. 572; *Grand Trunk Western R. Co. v. Makris,* 142 Misc. 807, 255 N. Y. S. 443.

York-Shipley accepted full payment of the sale price of the four items kept by Stoker Service. In thus taking the benefits of the act of the plaintiffs in transporting and delivering these items to Stoker Service, York-Shipley estopped itself to deny liability to the plaintiffs for the freight charges on such four items as the consignor named in the bills of

lading covering such items. *Auto Co. v. Rudd,* 176 N. C. 497, 97 S. E. 477; *Vick v. Wooten,* 171 N. C. 121, 87 S. E. 989; *McCullers v. Cheatham,* 163 N. C. 61, 79 S. E. 306.

This brings us to a consideration of the judgment on the counterclaim.

As *Mr. Justice Field* so well said in *North Pennsylvania Railroad Company v. Commercial National Bank of Chicago,* 123 U. S. 727, 8 S. Ct. 266, 31 L. Ed. 287, "The duty of a common carrier is not merely to carry safely the goods entrusted to him, but also to deliver them to the party designated by the terms of the shipment, or to his order, at the place of destination."

Each of these shipments moved in interstate commerce under an order bill of lading obligating the plaintiffs not to deliver the freight except upon "the surrender of the original order bill of lading properly indorsed" by York-Shipley. When the plaintiffs delivered the property to Stoker Service without the presentation and surrender of the bills of lading properly endorsed, they delivered the goods to one who was not lawfully entitled to the possession of them under the bills of lading and the relevant statutes, and became liable for any loss which the shipper, York-Shipley, sustained thereby. 49 U.S.C.A. 89-90; *Pere Marquette R. Co. v. French & Company,* 254 U. S. 538, 41 S. Ct. 195, 65 L. Ed. 391; *Railroad v. Armfield,* 189 N. C. 581, 127 S. E. 557. The liability of plaintiffs to York-Shipley is not affected in any degree by the fact that the bills of lading contained a direction for plaintiffs to notify Stoker Service of the arrival of the freight at Charlotte. *Killingsworth v. Railroad,* 171 N. C. 47, 87 S. E. 947; *Sloan v. Railroad,* 126 N. C. 487, 36 S. E. 21; *King v. Barbarin,* 161 C. C. A. 311, 249 F. 303.

If York-Shipley had been so minded, it could have refrained from taking any steps to avoid or minimize the loss resulting from the wrongful delivery of its goods, and treated such delivery as a conversion of such goods by plaintiffs, and sued plaintiffs for the full value of the goods at the time and place of the conversion. *Killingsworth v. Railroad, supra;* 9 Am. Jur., Carriers, section 581; 13 C. J. S., section 174.

But York-Shipley did not elect to sue plaintiffs for conversion. Instead of so doing, it minimized the loss resulting from the wrongful delivery by accepting the sale price of a relatively small part of the goods from the person improperly receiving the shipments and by repossessing the remainder of the goods at an expense of $805.47, and obtained judgment against plaintiffs on its counterclaim for the amount of the outlay as damages proximately flowing from breaches of the contracts of the plaintiffs to require production and surrender of the order bills of lading properly endorsed before delivering the goods.

The plaintiffs attack the validity of the judgment rendered in favor of York-Shipley on the counterclaim on the ground that York-Shipley

had ratified the wrongful delivery and precluded itself thereby from suing them therefor by making the agreement of 14 February, 1947, with Stoker Service and by accepting the advantages accruing to it thereunder.

Undoubtedly, a misdelivery of freight by a carrier may be ratified by the shipper so as to relieve the carrier of liability. 9 Am. Jur., Carriers, section 557. The rule as to ratification is thus stated in 10 C. J., Carriers, section 381: "An unauthorized delivery may be ratified by the party entitled to delivery of the goods; and, where such delivery is ratified with a full knowledge of the facts, the carrier is thereby exempted from further liability. But, in order to release a carrier from liability for wrongful delivery on the ground of ratification, it must plainly appear that the ratification was intended with full knowledge of all material facts. What constitutes a ratification depends on the facts of each particular case and may be shown by express words or implied from words, acts, or silence. The burden of showing ratification rests on the carrier. If the facts relating to ratification are in dispute or if reasonable minds might draw different conclusions from the facts, the question of ratification is for the jury."

Here, the court deemed the evidence relating to ratification to be conflicting, and made a finding of fact to the effect that the wrongful delivery of the property reclaimed by York-Shipley had not been ratified. This finding was fully supported by the testimony indicating that York-Shipley was merely seeking to avoid or minimize the loss resulting from the wrongful acts of the plaintiffs. *Arrington v. Railroad,* 51 N. C. 68, 72 Am. D. 559; *Cooper v. Express Co.,* 165 N. C. 538, 81 S. E. 743; *Lipman Refrigerator Co. v. Baltimore & Ohio Warehouse Co.,* 20 Ohio App. 523, 152 N. E. 686; *Alderman Bros. Co. v. New York, N. H. & H. R. Co.,* 102 Conn. 461, 129 A. 47.

The plaintiffs assert, however, that the facts relating to this phase of the case are undisputed, and engender the inescapable legal conclusion that a ratification did occur. This contention is untenable, even if one accepts the premise that the evidence concerning ratification is without conflict. This case involves twelve separate and unrelated shipments under twelve separate and unrelated bills of lading. Manifestly, the act of a shipper in ratifying the wrongful delivery of specified items of freight consigned under one or more bills of lading neither compels nor justifies an inference that he thereby intended to ratify other wrongful deliveries of other property transported under other bills of lading. Moreover, we think the legal result would have been the same on the present record if all of the equipment had been shipped under one bill of lading for the reason that the mere acceptance by the owners of payment for part of the goods delivered to the wrong person does not operate as a waiver of the wrongful delivery of the remainder. *Lester v. Delaware*

*L. & W. R. Co.,* 92 Hun. 342, 36 N. Y. S. 907; *Olvany v. Nyamco Associates,* 154 Misc. 807, 278 N. Y. S. 242.

The case at bar is distinguishable from *Brown v. Vandalia R. Co.,* 163 Ill. App. 473, and *Blowers v. Canadian Pac. R. Co.,* 155 F. 935, where it was properly held that a shipper ratifies a wrongful delivery by accepting from the person to whom delivery is made payment of the entire price of the goods, or part payment with a promise to pay the balance.

The contention of York-Shipley that the court erred in refusing to adjudge the plaintiffs liable to it for an additional $943.85 is without merit. The court found that this alleged loss "did not result from the acts of the plaintiffs." This finding has the same force and effect as the verdict of a jury. McIntosh: North Carolina Practice and Procedure in Civil Cases, section 516.

For the reasons given, the trial and judgment in the court below will be upheld.

Judgment affirmed on appeal of plaintiffs.

Judgment affirmed on appeal of defendant, York-Shipley, Inc.