A. COLLINS v. SEABOARD AIR LINE RAILWAY COMPANY, GEORGIA & FLORIDA RAILWAY COMPANY, AND JOHN SKELTON WILLIAMS, RECEIVER.

(Filed 22 January, 1924.)

1. **Carriers of Goods — Consignor and Consignee — Title — Stoppage in Transitu—Evidence.**

   While ordinarily a shipment by common carriage vests in the consignee the title to the goods, for the purpose of the shipment, with the right of stoppage *in transitu* by the consignor therein named, such consignor's right may otherwise be shown by transactions and agreements between the parties.

2. **Same—Bill of Lading—Defenses.**

   The consignor of a shipment of goods by common carriage, as named in the bill of lading, had bought the goods from another for his customer, and under an agreement between him and his vendor, the goods were shipped direct to the customer, and the bill of lading was attached to a draft on the consignor so named, drawn by his vendor, which he refused to pay. The consignee paid for the goods and brought suit against the carrier after the carrier had redelivered the goods to the consignor's vendor on its demand. *Held,* the carrier may show as a complete defense to the action, that by the agreement between the consignor and his vendor, the latter and not the former was the real party in interest as the consignor of the shipment.

APPEAL by plaintiff from *Lyon, J.,* at April Term, 1923, of MECK-LENBURG.

Civil action. On 4 October, 1920, the Dunham Lumber Company of Albany, Georgia, contracted to sell the Charlotte Lumber Company a car load of lumber at the price of $1,062.53, and not having the lumber on hand, contracted to purchase it from the Madison Lumber Com-

pany of Madison, Florida. On 14 October, 1920, the Madison Company delivered the lumber to the Georgia and Florida Railway Company to be carried on its lines and the lines of the Seaboard Air Line Railway Company to the Charlotte Lumber Company at Monroe, North Carolina, instead of the Dunham Lumber Company. The defendants contend that it was agreed the title to the lumber should not pass from the Madison Company until the purchase price was paid, but this was denied by the plaintiff. The initial carrier issued its bill of lading to the Madison Company, which thereupon drew a draft on the Dunham Company for the agreed price of the lumber, attaching the original bill of lading and forwarded them to a bank in Albany, Ga., for collection. The Dunham Company refused payment and the papers were returned to the Madison Company, who demanded the return of the lumber. Pursuant to this demand the Seaboard Company returned the lumber through the initial carrier to the Madison Company. The Dunham Company drew a draft on the plaintiff with bill of lading or copy attached and the draft was paid. There was evidence that the Madison Company had previously dealt with the Dunham Company and had always forwarded a draft for the purchase price of the lumber with bill of lading attached. In the shipment in question the Dunham Company requested that it be named as consignor and the plaintiff as consignee in the bill of lading, and this was done.

The suit was commenced by attachment and bond was given by the defendants.

The verdict was as follows:

1. Did Madison Lumber Company agree to sell to Dunham Lumber Company the car of lumber in question upon condition that title thereto should not pass from Madison Lumber Company until the purchase price therefor had been paid to Madison Lumber Company? Answer: "Yes."

2. If so, did Madison Lumber Company, pursuant to said agreement, obtain a bill of lading from defendant, Georgia and Florida Railway Company, in the name of Dunham Lumber Company, as consignor, and Charlotte Lumber Company as consignee? Answer: "Yes."

3. If so, did Madison Lumber Company, pursuant to said agreement and according to custom between it and Dunham Lumber Company, draw draft upon Dunham Lumber Company for the purchase price of said car of lumber and attach same to the original bill of lading covering said car of lumber, and cause same to be presented in due course to Dunham Lumber Company for payment? Answer: "Yes."

4. If so, was said draft and bill of lading duly presented to Dunham Lumber Company for payment and payment thereof refused? Answer: "Yes."

COLLINS v. R. R.

5. If so, was said draft in due course returned to Madison Lumber Company with the original bill of lading for said lumber attached because of the failure and refusal of Dunham Lumber Company to pay said draft? Answer: "Yes."

6. If so, did Madison Lumber Company, after the return of said draft and original bill of lading to it, surrender same up to defendant, Georgia and Florida Railway, and order said lumber returned to the Madison Lumber Company? Answer: "Yes."

7. If so, did said defendants, Georgia and Florida Railway and Seaboard Air Line Railway Company, upon the surrender of said original bill of lading and draft and, pursuant to order of Madison Lumber Company, return said car of lumber to said company? Answer: "Yes."

8. Did the Charlotte Lumber Company in the meantime notify the Dunham Lumber Company that it would not receive said lumber unless the contract price therefor was reduced ten dollars per thousand feet? Answer: "No."

9. If so, did Dunham Lumber Company, upon receipt of said notice, cancel the order for the car of lumber and so notify the Charlotte Lumber Company? Answer: "No."

10. Did the defendants wrongfully return said car of lumber to the Madison Lumber Company? Answer: "No."

11. If so, what damages, if any, is plaintiff entitled to recover of defendants? Answer: "None."

*Henderson & Roberts for plaintiff.*
*Cansler & Cansler for defendants.*

ADAMS, J. It is unquestionably true as a general rule that delivery of goods by the seller thereof to a common carrier for transportation to the buyer is *prima facie* a transfer of title, and such goods while in the carrier's possession are presumed to be the property of the consignee; but if before delivery to the consignee the seller notifies the carrier not to deliver the goods the carrier's duty then depends upon the actual facts as to whether the relation between the consignor and the consignee was such that delivery to the carrier constituted a transfer of title. 10 C. J., 228, sec. 317; Moore on Carriers, 188; *Aydlett v. R. R.,* 172 N. C., 47; *Gaskins v. R. R.,* 151 N. C., 19; *Mfg. Co. v. R. R.,* 149 N. C., 261; *Stone v. R. R.,* 144 N. C., 220. Such relation, it has been said, may be determined not only by the terms of the bill of lading but by the intention of the parties as expressed by their dealings and by all the circumstances of the transaction. *Emery's Sons v. Nat. Bank,* 18 A. R. (Ohio), 299.

The Madison Lumber Company delivered the lumber in question to the Georgia and Florida Railway Company and obtained from it an open bill of lading in which the Dunham Company was named as consignor and the Charlotte Lumber Company (afterwards acquired by the plaintiff) as consignee, and the appeal is based on the contention (the name of the Madison Company not appearing in the bill of lading) that the Dunham Company was the consignor, that neither the Dunham Company nor the consignee demanded a redelivery of the lumber, and that the defendants were without authority to divert or return the shipment. The contention of the defendant is diametrically the opposite. So the immediate question is this: When the Dunham Company refused to pay for the lumber and to accept the bill of lading, were the defendants justified in returning the shipment to the Madison Company upon its demand? Embraced in this question are two others: (1) May the seller retain title to goods shipped upon an open bill of lading in which his name does not appear and in which the buyer is called the consignor and the person to whom the buyer has contracted to sell is called the consignee, in the absence of a stipulation in the bill of lading that title shall be retained? (2) If so, is there sufficient evidence that the title was returned by the Madison Company?

Eminent authorities in other jurisdictions maintain the general doctrine that when a draft is attached to a bill of lading, whether the bill of lading is made out in the name of the consignor or consignee, title to goods usually does not pass to the consignee upon delivery to the carrier. The consignee cannot refuse to pay the draft and at the same time claim title to the property. *Hopkins v. Cowen,* 47 L. R. A. (Md.), 124; *Spence v. N. and W. Ry. Co.,* 29 L. R. A., 578; *Bank v. Jones,* 55 A. D. (N. Y.), 290. See, also, note to *Ramsey & Gore Man. Co. v. Kelsea,* 22 L. R. A., 428.

There is an elaborate discussion of the question in *Greenwood Grocery Co. v. Canadian County M. and E. Co.,* 2 L. R. A., N. S. (S. C.), 79, in which the material facts were as herein stated. The defendant, a corporation resident in Oklahoma, contracted to sell and deliver to the plaintiff at Greenwood, South Carolina, 250 barrels of flour at $4.50 a barrel. The defendant consigned the flour to the plaintiff and sent to. the bank of Greenwood a draft on the plaintiff, with the bill of lading attached; but the draft called for payment at the rate of $5.50 a barrel instead of $4.50, the contract price. The plaintiff tendered to the bank the contract price and demanded the bill of lading, but the bank refused to accept less than the full amount of the draft and withheld the bill of lading. The plaintiff then brought suit for damages and attached the flour which was in the possession of the railroad. The defendant's position was that when the flour was delivered to the carrier,

consigned to the plaintiff, it ceased to be the property of the defendant and became the property of the plaintiff, subject only to the right of stoppage *in transitu,* and that the attachment must therefore fail.

The Court held that the effect of a bill of lading issued by the carrier on the title to the property as between the consignor and the consignee is a question of fact to be determined, not only by the terms of the paper itself, but by the intention of the parties as expressed by dealings with each other, and that when a draft for the price of the shipment is drawn on the purchaser with the bill of lading attached, the title does not ordinarily pass to him until the draft is paid. In support of this position the Court adopted the following language of *Lord Justice Cotton:* "So, if the vendor deals with or claims to retain the bill of lading in order to secure the contract price, as when he sends forward the bill of lading with a bill of exchange attached, with directions that the bill of lading is not to be delivered to the purchaser till acceptance or payment of the bill of exchange, the appropriation is not absolute, but until acceptance of the draft, or payment, or tender of the price, is conditional only, and until such acceptance or payment or tender, the property in the goods does not pass to the purchaser; and so it was decided in *Turner v. Liverpool Docks,* 6 Exch., 543; 20 L. J. Exch., N. S., 393; *Shepherd v. Harrison,* L. R., 4 Q. B., 196; *Ogg v. Shuter,* L. R., 1, C. P. Division, 47. But if the bill of lading has been dealt with only to secure the contract price, there is neither principle nor authority for holding that in such a case the goods shipped for the purpose of completing the contract do not, on payment or tender by the purchaser of the contract price, vest in him. When this occurs, there is a performance of the condition subject to which the appropriation was made, and everything which, according to the intention of the parties, is necessary to transfer the property is done; and in my opinion, under such circumstances, the property does, on payment or tender of the price, pass to the purchaser."

The reasoning and conclusion of the Court are fortified by numerous precedents which are set out in the opinion and need not be cited here. In addition the following authorities may be examined: *Emery's Sons v. Nat. Bank, supra;* note to *Chandler v. Sprague,* 38 A. D., 419; *Nat. Bank v. Dearborn,* 15 A. R. (Mass.), 92; *Grove v. Brien,* 8 Howard, 429; 12 L. Ed., 1142, and note; *Means v. Bank,* 146 U. S., 620; 36 L. Ed., 1107; *Mason v. Cotton Co.,* 148 N. C., 492; *Buggy Corporation v. R. R.,* 152 N. C., 120; *Myers v. R. R.,* 171 N. C., 190.

The plaintiff insists, however, that the principle enunciated in these cases is not pertinent for the reason that the Madison Company, at the request of the Dunham Company, consigned the lumber to the latter's customer and that the title thereby vested in the consignee named in the

bill of lading. We do not assent to this conclusion. The bill of lading did not necessarily determine the contract between the consignor and the consignee, and if treated as an admission or declaration of the consignor's purpose at the time such admission or declaration was subject to rebuttal and explanation by other circumstances attending the transaction. *Emery's Sons v. Nat. Bank, supra.* The Madison Company sold the lumber, not to the plaintiff, but to the Dunham Company, and the consignment to the plaintiff did not affect the relation existing between the vendor and the vendee. *Nat. Bank v. Shaw,* 61 N. Y., 283; *Minor v. R. R.,* 32 Conn., 91.

In view of the doctrine stated and maintained by the foregoing authorities we cannot concur in the plaintiff's argument that it was not open to the defendants to show that the title to the lumber in question was retained by the vendor and did not vest in the Dunham Company. This being so, the remaining question is whether reversible error was committed in the trial.

Among the exceptions addressed to this question only those relating to the charge require discussion; the others, we think, are clearly untenable.

His Honor instructed the jury that if a custom prevailed among lumber dealers in that territory to the effect that lumber delivered to the railroad should remain the property of the shipper until paid for, or that the shipper (Madison Company) retained the original bill of lading issued by the railroad and the shipper having the bill of lading in its possession demanded of the railroad the return of the lumber, they should answer the first issue "Yes." To this instruction the plaintiff excepted on the ground that there was no evidence of such custom, and the retention of the bill of lading and the demand for the return of the lumber did not warrant an affirmative answer to the first issue. His Honor further told the jury to answer the first issue "No"· if they found from the evidence that the original bill of lading was delivered to the Dunham Company by the Madison Company or by the railroad and was attached to the draft sent to Charlotte Lumber Company for collection.

The plaintiff contended that the original bill of lading was obtained by the Dunham Company and forwarded with the draft drawn on the plaintiff, and the defendants contended that the bill of lading sent to the plaintiff was "spurious" and that the shipper retained the original in its possession.

As we understand the evidence the plaintiff does not deny that the shipper sent for collection to a bank in Albany its draft on the Dunham Company with the bill of lading attached or that the shipper demanded of the defendants a return of the lumber. These undisputed facts with the jury's finding that the original bill of lading was retained by the

shipper were sufficient to support the answer to the first issue, even if there was not adequate evidence of a general custom. It will be noted, however, that the third issue refers to a custom between the seller and the purchaser, and his Honor's instruction was evidently understood by the jury to apply to the previous dealings between these parties. 17 C. J., 520, sec. 87.

After careful and deliberate consideration of all the exceptions we find

No error.