## STATE v. JOE DAWSON.

(Filed 29 October, 1947.)

**1. Criminal Law § 31b—**

A lay witness is competent to testify whether or not in his opinion a person was drunk or sober on a given occasion on which he observed him.

**2. Criminal Law § 31a: Automobiles § 28d—**

The conditions and the opportunity for observation goes to the credibility of a witness' testimony as to whether the person observed was intoxicated, and not to its competency.

**3. Same—**

Testimony of witnesses to the effect that defendant was intoxicated, based upon their observation, some about three hours prior, others about fifteen minutes prior, others immediately after and others up to three hours after the automobile accident in question, tends to show that defendant was continuously under the influence of intoxicants, and none of the evidence is incompetent as being too remote in point of time.

**4. Criminal Law § 42d—**

Where the testimony of a witness is challenged and its credibility put at issue by a plea of not guilty and by extensive cross-examination, the admission of a written statement made by the witness prior to trial, in substantial accord with her testimony, for the purpose of corroboration, is without error.

**5. Criminal Law § 78e (2)—**

Any error or omission in the statement of the evidence on a subordinate feature of the case, or in the contentions of the parties, must be called to the attention of the court in time for correction.

**6. Criminal Law § 81c (2)—**

Where the charge is free from prejudicial error when construed contextually, assignments of error thereto will not be sustained.

APPEAL by defendant from *Nimocks, J.,* at April Term, 1947, of LENOIR.

Criminal prosecution tried upon indictment charging the defendant with the felonious slaying of one Robert Bruce Johnson.

The evidence shows that about six o'clock on the evening of 13 October, 1946, an automobile driven by the defendant collided with one driven by the deceased, Robert Bruce Johnson, on the Kinston-Greenville Highway, near Kinston. Both cars were badly damaged and the collision resulted in the instant death of the deceased. The defendant sustained a fractured ankle, a chest injury and a slight concussion of the brain as a result of the collision.

STATE *v.* DAWSON.

The State's evidence tends to show that the defendant had been drinking prior to the time of the collision, and was drunk at the time of the collision and for sometime thereafter. That the defendant stopped at the home of his brother about 3:45 in the afternoon, and in attempting to turn his car around backed it into a ditch from which it had to be pulled out by a tractor. He then went into the home of his brother and remained there about forty-five minutes, and while there took a drink of whiskey. He carried his bottle of whiskey with him. Thereafter, he drove about twenty miles on the highway before his car collided with the car of the deceased. A number of witnesses for the State testified that they had followed the car of the defendant for about twenty miles before defendant reached the point where the collision occurred, and defendant's car was continually zigzagging from side to side on the highway, and narrowly missed hitting a number of automobiles. That they tried to pass him several times, but he would pull over in front of them, and they decided to remain behind him. The defendant, just prior to the collision, stopped at a filling station about two and three-quarter miles from the scene of the wreck. He got out of his car and when he did so a bottle of whiskey fell on the ground. He picked up the bottle and put it in the car. The defendant was seen to stagger and appeared to be in a drunken condition. These witnesses stopped at the filling station to get some oil for their car, and one of them, at the request of the attendant at the filling station, offered to drive the defendant's car to Kinston, but the defendant replied, "No, I can drive my own car." He got in his car and almost collided with a truck as he entered the highway. He then proceeded down the highway towards Kinston. Just before the collision the defendant's car swerved off the paved portion of the highway on to the shoulder of the road, and then turned back sharply on the paved highway and collided with the car of the deceased. The collision took place on the left-hand side of the highway in the direction in which the defendant was traveling.

Verdict: "The defendant is guilty of involuntary manslaughter." Judgment: Imprisonment in the State's Prison and assigned to work under the supervision of the State Highway and Public Works Commission for not less than three nor more than five years. Defendant appeals, assigning error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Allen & Allen, John G. Dawson, Rivers D. Johnson, Norwood B. Boney, and Albion Dunn for defendant.*

DENNY, J. The defendant has twenty-two assignments of error based on exceptions to the admission of testimony bearing on the question as to

whether or not the defendant was under the influence of an intoxicant at the time of the automobile collision which resulted in the death of Robert Bruce Johnson. Some of the witnesses testified they saw the defendant at 3 :30 in the afternoon, eight or ten witnesses testified they saw him a few minutes before the collision, at a filling station. Other witnesses observed him at the scene of the collision, while others saw him in jail shortly afterwards. Each of the witnesses either testified that in his or her opinion the defendant was drunk, or that he was under the influence of an intoxicant. The defendant testified that he took a small drink late in the afternoon before he left the home of his brother, and might have taken one earlier in the day. He also testified that he was in jail not more than an hour and three-quarters before being released on bond, and that he was in a subconscious condition when he was put in jail. He contends, however, that he was not under the influence of an intoxicant, but that his condition was caused from the concussion which he received in the collision. He further testified that the collision was caused by his being blinded by cars following him, which threw lights on his rear vision mirror and blinded him. "They blinded me and I don't know what happened . . . I couldn't tell where I was."

The defendant contends that while a lay witness may, from his observation reasonably made, give his opinion as to whether he was drunk or sober, on the afternoon and evening of 13 October, 1946, the admissibility of such evidence will depend upon the remoteness from the time of the accident and the opportunity of the witness to observe the defendant's condition, citing *S. v. Kelly,* 227 N. C., 62, 40 S. E. (2d), 454. The factual situation in the cited case is not applicable here. There we held it to be error to admit testimony of the condition of the defendant more than twelve hours after the collision as evidence of his condition at the time of the collision, there being no evidence to show a continuous drunken condition. Here the evidence tends to show the defendant was continuously under the influence of an intoxicant during the afternoon and evening of the day in question. We have the testimony of the defendant himself that he took a drink of whiskey after 3 :45 that afternoon and that he may have taken a drink earlier in the day. According to the evidence he was staggering and in a drunken condition at a filling station about fifteen minutes before the collision. His condition was such that one of the State's witnesses, at the request of the attendant at the filling station, offered to drive his car to Kinston for him. Furthermore, according to the evidence he was drunk at the scene of the collision. For a short time after the wreck he could not stand alone, and slumped to the ground. Later he staggered when he walked and threatened to kill the Highway Patrolman when he arrested him. The officers who observed him at the scene of the collision, testified that he was under the

influence of an intoxicant. Other officers who observed him while he was in jail, testified that in their opinion he was at that time under the influence of an intoxicant.

Ordinarily opinion evidence is limited to duly qualified experts, but there are exceptions. A lay witness is competent to testify whether or not in his opinion a person was drunk or sober on a given occasion on which he observed him. The conditions under which the witness observed the person, and the opportunity to observe him, go to the weight, not the admissibility of the testimony, Stansbury on Evidence, Sec. 129; *S. v. Harris,* 213 N. C., 648, 197 S. E., 142; *S. v. Dills,* 204 N. C., 33, 167 S. E., 459; *S. v. Holland,* 193 N. C., 713, 138 S. E., 8; *S. v. Jessup,* 183 N. C., 771, 111 S. E., 523. The facts and circumstances revealed by this record tend to show that the defendant was continuously under the influence of an intoxicant from 3:30 in the afternoon of 13 October, 1946, until his discharge from jail between 8:00 and 9:00 o'clock the same evening, following the automobile collision about 6:00 o'clock. Consequently, we hold that none of the evidence offered by the State as to the condition of the defendant before and after the time of the automobile collision involved herein, was too remote in point of time to justify its exclusion from consideration by the jury. Stansbury on Evidence, Sec. 90, p. 170; *S. v. Peterson,* 212 N. C., 758, 194 S. E., 498.

The defendant assigns as error the admission of a written statement of one of the State's witnesses, for the purpose of corroborating her oral testimony given at the trial. The defendant contends the testimony of the witness had not been impeached and the defendant had made no effort to break down her testimony, therefore the written statement previously given by her was inadmissible, citing *S. v. Parish,* 79 N. C., 610, and *S. v. Lassiter,* 191 N. C., 210, 131 S. E., 577. We do not think the record supports the contention of the defendant in this respect. The witness was a young girl, 16 years of age, and on direct examination she had testified that in her opinion the defendant was drunk. On cross-examination an effort was made to impeach her testimony as to his condition at the time of the collision and also as to her testimony relative to the way or manner the defendant had driven his car just prior thereto. The oral testimony of the witness and the statements made by her prior to the trial, which were reduced to writing and introduced in evidence, were in substantial accord. We think the effort of the defendant to impeach the testimony of this witness on cross-examination, was sufficient to make her previously written statement admissible for the purpose of corroborating her testimony. *S. v. Litteral,* 227 N. C., 527, 43 S. E. (2d), 84; *S. v. Scoggins,* 225 N. C., 71, 33 S. E. (2d), 473; *S. v. Gore,* 207 N. C., 618, 178 S. E., 209; *S. v. Bethea,* 186 N. C., 22, 118 S. E., 800. In *S. v. Litteral, supra,* we held where the testimony of

a witness is challenged and its credibility put at issue by a plea of not guilty and by extended cross-examination, evidence may be introduced to corroborate the testimony of the witness.

The defendant brings forward and argues twenty-two assignments of error based on exceptions to his Honor's charge to the jury. It is contended that his Honor failed to give as full and complete a statement of the evidence as he should have, particularly of the testimony elicited from the State's witnesses on cross-examination. There was no request for a more complete narrative of the testimony. Moreover, at the close of the charge, the Court specifically inquired of counsel for the defendant if there was anything further they wished stated to the jury and counsel replied in the negative. Any error or omission in the statement of the evidence, or in the contentions of the parties, must be called to the attention of the Court in time for correction. *S. v. Warren,* 227 N. C., 380, 42 S. E. (2d), 350; *S. v. Thompson,* 227 N. C., 19, 39 S. E. (2d), 823; *S. v. McNair,* 226 N. C., 462, 38 S. E. (2d), 514; *S. v. Smith,* 225 N. C., 78, 33 S. E. (2d), 472.

We have carefully examined the many assignments of error directed to the charge of the Court, and we think when the charge is considered contextually, as it should be, *S. v. Hairston,* 222 N. C., 455, 23 S. E. (2d), 885; *S. v. Manning,* 221 N. C., 70, 18 S. E. (2d), 821; *S. v. Shepherd,* 220 N. C., 377, 17 S. E. (2d), 469; *S. v. Henderson,* 218 N. C., 513, 11 S. E. (2d), 462, no prejudicial or reversible error is shown.

The remaining assignment of error as to the form of the judgment, is without merit.

In the trial below, we find

No error.