STATE v. EARL BLACK AND CHARLIE FALES.

(Filed 25 May, 1949.)

**1. Criminal Law § 29a—**

Where defendants have elicited testimony disclosing delay in commencement of the prosecution against them in order to establish an inference that the State's witnesses were conscious of the weakness of the State's case against defendants, it is competent for the State to explain the delay for the purpose of showing that such inference was not warranted by the circumstances.

**2. Criminal Law § 35—**

The hearsay rule precludes the admission in evidence of extrajudicial assertions of a third person for the purpose of establishing the truth of the facts asserted by such third person, but it does not preclude testimony as to such assertions for the purpose of showing the state of mind of the witness in consequence of such assertions.

**3. Same—**

Defendants elicited testimony disclosing delay in commencing the prosecution against them. To controvert the inference sought to be established by defendants from such delay, a deputy sheriff was permitted to testify for the State that an S.B.I. agent, not a witness, told the deputy not to arrest defendants at the time because they were giving the agent some information on another, unconnected case. *Held:* The testimony of the deputy is not incompetent as hearsay since it was not admitted to prove the truth of the assertions by the S. B. I. agent.

**4. Criminal Law § 53j—**

The court correctly charged the jury as to the specific factors it might consider in determining the credibility of the witnesses and the weight to be attached to their testimony, and then charged that the jury might take into consideration "any other factors that suggest themselves to your good judgment and common sense to enable you to pass upon the credibility" of each witness. *Held:* The charge construed contextually merely instructed the jury that it might determine the credibility of the witnesses from the factors specially enumerated by the court and other circumstances in evidence tending to throw light upon these matters, and so construed, the charge is not erroneous.

**5. Criminal Law § 78e (2)—**

Asserted misstatement of the contentions of the State must be brought to the trial court's attention in time to afford opportunity for correction in order for an exception thereto to be considered.

APPEAL by defendants, Earl Black and Charlie Fales, from *Bobbitt, J.,* and a jury, at the October Term, 1948, of the High Point Division of GUILFORD.

The defendants were tried upon consolidated indictments in which they were charged with these offenses: (1) Breaking into and entering the

building of G. F. Waddell and wife, Goldie Waddell, with intent to commit the felony of larceny therein contrary to G.S. 14-54; and (2) robbery with firearms in violation of G.S. 14-87.

The State presented evidence at the trial indicating that the prosecuting witnesses, G. F. Waddell and his wife, Goldie Waddell, as partners, operated a restaurant known as "Waddell's Stop-N-Eat" in a building standing beside United States Highways 29 and 70 about half way between Greensboro and High Point in Guilford County; that after the restaurant had been closed for business, to wit, on the early morning of 19 April, 1948, two men, who were masked and armed with pistols, entered the building through a window, which they pried open, and took $1,750 belonging to the prosecuting witnesses from the presence of Goldie Waddell and from the person of G. F. Waddell by locking Goldie Waddell up in a closet and by beating, torturing, and threatening to shoot and kill G. F. Waddell; and that thereafter the intruders fled with the stolen money, leaving the prosecuting witnesses bound and gagged. In testifying for the State at the trial, both G. F. Waddell and Goldie Waddell positively identified the defendants as the perpetrators of the offenses set out above. Their evidence in this respect, however, was sharply contradicted by testimony adduced by the defendants tending to show that at the time in controversy they were at their respective homes in Wilmington, North Carolina, almost 200 miles distant from the restaurant.

On 20 April, 1948, G. F. Waddell advised the State's witness, D. S. Lee, a deputy sheriff of Guilford County, that he suspected the guilty parties to be a third person, whom he named, and the defendant, Earl Black, who in time past had lived in Guilford County and patronized "Waddell's Stop-N-Eat." The record does not disclose, however, that this suspicion was communicated to the State Bureau of Investigation by the Sheriff of Guilford County, who sought assistance in ferreting out the perpetrators of the offenses in question.

The State Bureau of Investigation undertook to solve simultaneously the occurrence at "Waddell's Stop-N-Eat" and a charge of the defendant, Earl Black, that on 31 October, 1947, he was assaulted in a secret manner by some unknown person while standing on the driveway at his service station in Wilmington.

The State Bureau of Investigation made separate requests of the prosecuting witnesses and Earl Black to visit the Sheriff's Office in Fayetteville, North Carolina, with a view to determining whether or not certain men confined in the Cumberland County jail were guilty of complicity in the matters set forth above. It happened by apparent coincidence that the prosecuting witnesses and Earl Black, who was accompanied by his personal friend, the defendant, Charlie Fales, arrived at the Sheriff's Office in Fayetteville at precisely the same time. D. S.

15—230

Lee and J. W. Donovant, another deputy sheriff of Guilford County, who had escorted the prosecuting witnesses from Greensboro to Fayetteville, and George Canady, the representative of the State Bureau of Investigation having these matters in charge, were present.

The State offered testimony at the trial tending to show that upon encountering Black and Fales at Fayetteville the prosecuting witnesses recognized that they were the men who had entered their restaurant and robbed them of $1,750 on 19 April, 1948, and that the prosecuting witnesses thereupon called Lee and Donovant aside and secretly informed them of that fact. The defendants elicited evidence on the cross-examination of the prosecuting witnesses and Donovant, who also testified for the State, that notwithstanding these facts no prosecution was instituted against the defendants until 15 September, 1948, when warrants were issued against them upon complaints made by Deputy Sheriff Lee charging them with the offenses involved in this case.

The State thereupon called on Lee to explain "the delay in the issuance of the warrants." He testified over the exceptions of the defendants that the following colloquy took place between him and George Canady, of the State Bureau of Investigation, immediately after he was advised by the prosecuting witnesses that the defendants were the men who had robbed them: "I called Mr. Canady around the corner and told him that they had identified Fales and Black as the men who robbed them up there, and asked him why we didn't grab them off. Mr. Canady said, 'We can't arrest them at this time due to the fact they are giving me some information on another case that doesn't have any relation to Black and Fales.' He said for me to wait awhile before they were arrested. He also asked me when I did get ready to arrest them to let him know, to be sure he had everything out of the way. I didn't issue a warrant until I got ready to arrest them and pick them up because I didn't want any information to leak out whatsoever. I didn't arrest them there that day in Fayetteville because I was asked not to by Mr. George Canady."

The conference between Lee and Canady occurred out of the presence of the defendants, and Canady did not testify on the trial. In admitting Lee's evidence as to his colloquy with Canady, the court gave this instruction to the jury: "This testimony, Gentlemen of the Jury, is not admitted as evidence bearing upon what happened, if anything did happen, upon the occasion referred to in the bill of indictment. It is admitted for your consideration only as it might bear—it being for you to determine to what extent, if any, it does bear—upon the matter of the delay in the issuance of the warrants."

The jury found the defendants guilty upon both of the charges, the court sentenced the defendants to imprisonment in the State's prison, and the defendants appealed, assigning as errors the evidence of the State's

witness, D. S. Lee, as to his colloquy with Canady and certain excerpts from the charge.

*Attorney-General McMullan and Assistant Attorney-General Rhodes for the State.*

*H. L. Koontz and C. L. Shuping for the defendants, appellants.*

ERVIN, J.   The defendants elicited the testimony relating to the delay in the commencement of the prosecution against them as an implied admission by conduct on the part of the State's witnesses that they were conscious of the weakness of the State's case against the defendants. Consequently, it became proper for the State to explain the delay, and to show that the inference which the defendants sought to draw from it was not warranted by the circumstances. *Collins v. R. R.,* 187 N.C. 141, 120 S.E. 824; *McCraw v. Insurance Co.,* 78 N.C. 149; Wigmore on Evidence (3rd Ed.), section 284; Stansbury's North Carolina Evidence, section 178; 31 C.J.S., Evidence, section 380.   This the State undertook to do by the testimony of the State's witness, D.S. Lee, as to his conversation with George Canady, the representative of the State Bureau of Investigation.

The defendants insist with much earnestness that the ruling of the court receiving this testimony runs afoul of the Hearsay rule.   They say that the soundness of their position becomes indisputably clear when the evidence of Lee as to the unsworn statements of Canady is laid alongside the well settled principle that evidence is hearsay if "its probative force depends, in whole or in part, upon the competency and credibility of some person other than the witness by whom it is sought to produce it." *Randle v. Grady,* 228 N.C. 159, 45 S.E. 2d 35; *Teague v. Wilson,* 220 N.C. 241, 17 S.E. 2d 9; *Young v. Stewart,* 191 N.C. 297, 131 S.E. 735; *S. v. Lassiter,* 191 N.C. 210, 131 S.E. 577.

Manifestly this contention of the defendants arises out of a misapprehension of the part which the Hearsay rule is designed to play in the law of evidence.   The true office of the rule is explained with rare accuracy and succinctness in these words of Dean Wigmore: "The Hearsay rule forbids merely the use of an extrajudicial utterance as an assertion to evidence the fact asserted.   Such a use would be testimonial, *i.e.,* we should be asked to believe the fact because Doe asserted it to be true, precisely as we should be asked to believe Doe's similar assertion if made on the stand.   What the Hearsay rule forbids is the use of testimonial evidence—*i.e.,* assertions—uttered not under cross-examination.   If, then, an utterance can be used as circumstantial evidence, *i.e.,* without inferring from it as an assertion to the fact asserted, the Hearsay rule does not oppose any barrier, because it is not applicable."   Wigmore on Evidence

(3rd Ed.), section 1788. This statement comports fully with the repeated decisions of this Court holding that the testimony of a witness as to what some third person has told him will not be admitted as evidence of the existence of the fact asserted by such third person. *Salmon v. Pearce,* 223 N.C. 587, 27 S.E. 2d 647; *Bailey v. R. R.,* 223 N.C. 244, 25 S.E. 2d 833; *Bunting v. Salsbury,* 221 N.C. 34, 18 S.E. 2d 697; *Jackson v. Parks,* 220 N.C. 680, 18 S.E. 2d 138; *Brown v. Montgomery Ward & Co.,* 217 N.C. 368, 8 S.E. 2d 199; *Martin v. Crews,* 210 N.C. 776, 188 S.E. 316; *In re Barker,* 210 N.C. 617, 188 S.E. 205; *Jackson v. Scheiber,* 209 N.C. 441, 184 S.E. 17; *Trust Co. v. Blackwelder,* 209 N.C. 252, 183 S.E. 271.

The court admitted the testimony of Lee as to the extrajudicial statements of Canady for the consideration of the jury "upon the matter of the delay in the issuance of the warrants" and not for the purpose of establishing the truth of any matter asserted by Canady. As has been pointed out, it was proper for the prosecution to show in explanation of the evidence elicited by defendants on cross-examination of the State's witnesses that the delay in the issuance of the warrants was occasioned by some reason other than a consciousness of the weakness of the State's case on the part of its witnesses. The evidence objected to consisted of two parts: one, as to the state of Lee's mind, which certainly had a tendency to establish that the reason for his delay in commencing the prosecution was inconsistent with any consciousness of the weakness of the State's case on his part; and the other, as to the extrajudicial utterances made by Canady to Lee, which certainly had a relevancy to show the inducing cause of Lee's state of mind. The testimony was not concerned in any degree with the truth or falsity of any matter asserted by Canady in his unsworn statements. Hence, its probative force depended solely on the competency and credibility of Lee, the witness by whom it was produced.

The court rightly admitted the evidence in question for the specific purpose for which it was offered under the evidential rule that "whenever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the Hearsay rule is concerned." Wigmore on Evidence (3rd Ed.), section 1789.

Instances of a similar use of a third person's extrajudicial statements to show another's state of mind are to be found in well considered decisions of this Court. *S. v. Mull,* 196 N.C. 351, 145 S.E. 677; *S. v. Hairston,* 182 N.C. 851, 109 S.E. 45. See, also, in this connection: *S. v. Dilliard,* 223 N.C. 446, 27 S.E. 2d 85.

The defendants assign as error the extract from the charge quoted below. After instructing the jury in complete accordance with time-

honored precedents as to specific factors it might consider in determining the credibility of the witnesses and the weight to be attached to their testimony, the court concluded the part of the charge devoted to this phase of the case with these words: "You may take into consideration any other factors that suggest themselves to your good judgment and common sense to enable you to pass upon the credibility or worthiness of belief of each witness and to determine the weight, if any, you will give to the testimony of each witness." When this excerpt from the charge is restored to its context and read with the other instructions of the court on this aspect of the case, it is plain that the court merely told the jury in the language claimed to be erroneous that it might determine the credibility of the witnesses and the value of their testimony from the factors specially enumerated by the court and any other circumstances in evidence tending to shed light on these matters. Assuredly, this instruction is subject to no just criticism. *Brown v. Jerrild,* 29 Ariz. 121, 239 P. 795; 23 C.J.S., Criminal Law, section 1257.

The remaining exceptions of the defendants other than those purely formal are addressed to portions of the charge in which the court stated contentions of the State. Since the defendants did not call these matters to the attention of the court at the trial and afford the court an opportunity to correct any inadvertencies in them at that time, any errors in the court's statement of these contentions are waived. *S. v. Hooks,* 228 N.C. 689, 47 S.E. 2d 234; *S. v. Gentry,* 228 N.C. 643, 46 S.E. 2d 863; *S. v. Dawson,* 228 N.C. 85, 44 S.E. 2d 527.

The defendants have had their day in court. Their rights have been fully safeguarded by the diligent efforts of able counsel. They have been accorded a fair trial according to relevant legal rules before an impartial and learned trial judge. The jury has found them guilty upon competent evidence under a clear and correct charge. The trial in the court below must be sustained for there is in law

No error.