STATE OF NORTH CAROLINA v. CLYDE MILTON BOYD, Defendant

No. COA09-1666

(Filed 1 February 2011)

**1. Appeal and Error— preservation of issues—failure to object—waiver of assignment of error**

Defendant waived his assignment of error related to the admission of defendant's recorded video statement in a robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon case. Defendant failed to register an appropriate objection at trial to the introduction of the evidence.

**2. Evidence— admission of video—opened door to introduction—no plain error**

The admission of defendant's recorded video statement in a robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon case did not amount to plain error where defendant opened the door to the introduction of the video.

**3. Robbery— dangerous weapon—conspiracy—sufficient evidence**

The trial court did not err in denying defendant's motion to dismiss the charges of robbery with a dangerous weapon and

conspiracy to commit robbery with a dangerous weapon because the State presented sufficient evidence of all elements of the crimes and of defendant's identity as the perpetrator.

**4. Constitutional Law— effective assistance of counsel—failure to object to evidence**

Defendant was not deprived of his Sixth Amendment right to counsel in a robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon case by virtue of his trial attorney's failure to object to the admission of defendant's recorded video statement. Defendant opened the door to the admission of this evidence by his testimony and the record demonstrated that the matters of which defendant complained were matters of trial strategy. Defendant's request that the trial court dismiss his claims for ineffective assistance of counsel without prejudice to defendant's right to reassert this claim in a motion for appropriate relief was denied.

Appeal by defendant from judgment entered 2 September 2009 by Judge Eric L. Levinson in Superior Court, Mecklenburg County. Heard in the Court of Appeals 18 August 2010.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Dahr Joseph Tanoury, for the State.*

*Brock, Payne & Meece, P.A. by C. Scott Holmes, for defendant-appellant.*

STROUD, Judge.

Clyde Milton Boyd ("defendant") appeals from his convictions for robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. Defendant contends that the trial court erred in improperly admitting the video of defendant's interrogation by police; by not dismissing the case because there was insufficient evidence as a matter of law; and because he was deprived of his Sixth Amendment Right to Counsel by trial counsel's ineffective assistance in failing to object to the admission of defendant's recorded video statement. For the following reasons, we deny defendant's request for a new trial.

## I. BACKGROUND

On 11 August 2008, defendant was indicted on one count of robbery with a dangerous weapon in violation of N.C. Gen. Stat.

§ 14-87 and one count of common law conspiracy to commit robbery with a dangerous weapon. Defendant was tried on these charges on 31 August 2009. The State's evidence showed that, on 5 June 2008, Michael Eugene Taylor was robbed at gunpoint in the parking lot of his place of business when he returned from cashing payroll checks for his employees. Mr. Taylor pulled into the parking lot of his business and was blocked in by two men driving a green colored Lincoln automobile. The passenger, who was wearing a ski mask and carrying a gun, got out of the vehicle and confronted Mr. Taylor. The armed assailant told Mr. Taylor to give "him his F"ing money." After a verbal altercation, the assailant threatened to shoot Mr. Taylor. The assailant hesitated when Mr. Taylor told him he would have to shoot him to get the money. At the assailant's hesitation, a second man, the driver, hit Mr. Taylor and took the money from him. Both men then sped away in the Lincoln. Mr. Taylor attempted to chase the men in his pickup truck but was unable to catch up with them. In his statements both to the police and to his father on the day of the attack, Mr. Taylor identified defendant as his assailant, saying he recognized his voice. On 16 July 2008, Mr. Taylor was presented with a photographic lineup from which he picked out defendant, saying he was "95% sure" that defendant was the one who robbed him.

Mr. Taylor testified that he had known defendant for between twelve and fifteen years; that, during that time, he had conversed with defendant and become familiar with his voice; that he recognized defendant's voice as that of his assailant; and that he could see that the assailant was black, as was defendant, and had a lazy eye, as did defendant. According to Mr. Taylor's father, Mr. Taylor had not wavered in his certainty of his identification of defendant from the day of the attack until trial.

Defendant took the stand, denied any involvement in the robbery, and testified regarding his prior convictions as well as his interrogation by police. In addition, defendant presented evidence supporting any alibi. In rebuttal, the State introduced a digital video disk (DVD) of defendant's interrogation by police. Though defendant's trial counsel made objections to the questions being asked of one of the police officers who was present as the video played, she made no objection to the introduction of the DVD itself.

On 1 September 2009, defendant was convicted of both counts with which he was charged. Defendant was sentenced by the trial court to a consolidated term of 84-110 months imprisonment.

Defendant appeals.[1]

A. The Video Statement

## II. ANALYSIS

[1] Defendant first contends that his video statement should not have been admitted because it was prejudicial in that it contained testimony by one detective who was unavailable for trial; improper questioning of defendant regarding arrests and convictions more than ten years old; mischaracterizations of defendant's alibi witnesses and of their statements; and improper expressions of the detectives personal opinions. Defendant further asserts both that trial counsel objected to the introduction of the video statement and, alternately, that the admission of the video constitutes plain error. As to both assertions, we disagree and find no error in the video's admission.

1. Objection to the Video Statement

Objections to the admission of evidence must generally be preserved by an objection by counsel at the time of their admission. N.C. Gen. Stat. § 8C-1, Rule 103; N.C.R. App. P. 10(a)(1). Failure to object constitutes a waiver of any assignment of error on appeal related to the admission of evidence. *State v. Reid*, 322 N.C. 309, 312, 367 S.E.2d 672, 674 (1988). Though there are no particular requirements as to form under Rule 8C-1, there is a requirement that an objection must, "be timely and clearly present the objection or error to the trial court." *Id.* at 312, 367 S.E.2d at 674.

We note that three exchanges are relevant to the consideration of whether defendant registered an appropriate objection to the introduction of the video in question. The first exchange occurred between Ms. Macon, for the State, Ms. Tosi, for defendant, and the Court before the introduction of the video:

MS. MACON: Okay. Otherwise I would like to just play the whole thing and stop and start at certain points.

THE COURT: How long does it take?

MS. MACON: The tape is forty minutes long.

THE COURT: Ms. Tosi.

---

1. We note that on, 9 June 2010, defendant filed a "Motion to Order the Clerk of Mecklenburg County to Transmit State's Exhibit 7 to the Court of Appeals." Since State's Exhibit 7 has been transmitted to this Court, we dismiss defendant's motion as moot.

**STATE v. BOYD**

[209 N.C. App. 418 (2011)]

MS. TOSI: Your honor, I mean I guess I would agree that there are certain parts that I don't think are relevant that need to come out.

THE COURT: Has it already been adjusted? How does that work, do you have a transcript and you know ahead of time?

MS. MACON: Your Honor, there is not a transcript. I have gone through and taken note of the time exactly where to start and stop.

THE COURT: Let me say this, I probably will say something to the jury to help explain in my own way I think, you know, subject to your concerns. But I'll probably say something to the jury about why there are portions that are missing. But during that forty minutes I may step out. If it's, you know, if I need to be here–well I'll need to hear it too. If you both stipulate that the court reporter need not take it down–are you fine with that?

MS. TOSI: Yes, as long as she is actually introducing it; yes, sir.

THE COURT: Is that correct?

MS. MACON: Yes, sir.

THE COURT: We will mark it as an exhibit. You're on Number 7, is that correct?

MS. MACON: So we will mark it later as Number 7. That way the court reporter doesn't need to take down that portion if you stipulate for the record what was played and what was not played.

Defendant did not make any objection when the video was entered into evidence and actually agreed that it should be so admitted.

Defendant also claims that the two following exchanges register objections to the video. Both occurred while the video was being played during the State's rebuttal evidence, in response to the trial testimony of defendant regarding his interrogation. Detective Wilson, one of the detectives who had initially interrogated defendant, was testifying about the interrogation. In the first instance, defendant objected to the State's questioning regarding defendant's statements to the detective regarding defendant's whereabouts on the day of the crime and the detective's motivation for this line of questioning:

Q: Do you recall what he told you about where he was at and who he was with?

A: He said he was at work. I believe that I asked him at some point if he knew the address of the house that he was at. He was not able to provide that to me. My thoughts were to go out if he gave me a specific location and see if the homeowner was there, if they were working on a house and they remembered him being there. I was never given or provided that information.

MS. TOSI: Your Honor, I'm going to OBJECT to this. We covered all this topic yesterday.

Likewise, in the second instance, defendant registered an objection to questions put to Detective Wilson regarding whether defendant had mentioned Shamika Smith, a witness for the defense, during his initial interrogation:

Q: Detective Wilson, at any point during the interview did the defendant mention to you a female by the name of Shamika Smith?

MS. TOSI: OBJECTION, Your Honor, to this; we covered this yesterday.

Both objections were made in response to specific questions to Detective Wilson during the playing of the DVD. Defendant proposes that defendant's counsel's objections are to the "way the detectives impeached Mr. Boyd rather than playing Mr. Boyd's statement" and "preserved this error for review for prejudicial error." But both objections included a specific basis for the objection, which was that the subject matter had already been "covered" the previous day. Neither objection addressed the supposed impeachment of defendant nor did they put the trial court on notice that defendant was attempting to object to the contents of the video. In fact, the objections were made to questions posed to Detective Wilson during his testimony, not to any of the statements on the video. Such objections do not "clearly present the objection or error to the trial court." *Reid*, 322 N.C. at 312, 367 S.E.2d at 674. Defendant's counsel made specific objections to particular questions regarding the examination of Detective Wilson and not to the video itself. Such objections do not inform the trial court that counsel is objecting to the presentation of the DVD and do not substitute for such objections. This interpretation of defendants objections is also consistent with defense counsel's later lack of objection to jury instructions regarding the consideration of the video as substantive evidence and reference to the video in order to illustrate defendant's demeanor during questioning.

Accordingly, we find that no objection was entered to the introduction of the video evidence sufficient to preserve defendant's assignments of error.

## 2. Plain Error in Admission of Video Statement

[2] Defendant proposes that the admission of defendant's video statement constitutes plain error. A review of the entire record convinces us that this is not so.

Plain error serves as an exception to the aforementioned general requirement that a timely objection at trial is required to preserve an assignment of error for appeal. N.C.R. App. P. 10(a)(4). However, absent a timely objection at trial, the burden that an appellant faces in asserting the improper admission of evidence under the plain error standard is higher than that faced by an appellant who has preserved the issue by a proper objection. *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986). The North Carolina Supreme Court has admonished that the plain error rule is to be "applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done . . . ." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citations and internal quotation marks omitted). For an appellate court to find plain error, it must first be convinced that, "absent the error, the jury would have reached a different verdict." *Reid*, 322 N.C. at 313, 367 S.E.2d. at 674. The burden of proving plain error falls on defendant. *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997). However, plain error does not exist where even otherwise inadmissible evidence is admitted by the State in order to answer the previous testimony of defendant. *State v. Wilkerson*, 363 N.C. 382, 407, 683 S.E.2d 174, 190 (2009), *cert. denied*, —— U.S. ——, 176 L. Ed. 2d 734 (2010).

Certainly some of the evidence which was contained in defendant's interrogation video would normally be inadmissible. However, defendant opened the door to this evidence by his own testimony regarding his interrogation.

> Under such circumstances, the law wisely permits evidence not otherwise admissible to be offered to explain or rebut evidence elicited by the defendant himself. Where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof,

even though such latter evidence would be incompetent or irrelevant had it been offered initially. *State v. Patterson,* 284 N.C. 190, 200 S.E.2d 16 (1973); *State v. Black,* 230 N.C. 448, 53 S.E.2d 443 (1949).

*State v. Albert,* 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981). Defendant's own testimony addressed the subject matter of the video. In defendant's testimony, he opened the door to the introduction of the video by making reference to the content of his interview of 21 July 2008, his alibi, and his arrest. Even setting aside the substantive questions relating to the arrest and his earlier convictions, which passed without objection during his cross-examination, the questions by defendant's counsel on redirect regarding the demeanor of the officers and the circumstances of his statement opened the door to the admission of the tape. Defendant made copious use of the video to illustrate his case, even referring to the video in closing arguments to illustrate his demeanor during questioning. In this situation, we find no error, and therefore no plain error, in the video's admission.

B. Motion to Dismiss

[3] Defendant also contends that it was error for the trial court to deny his motion to dismiss either at the end of the State's case or at the end of the trial because the evidence presented was insufficient to warrant a conviction on either charge as a matter of law. We disagree.

Upon review of the trial court's denial of a defendant's motion to dismiss:

the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied . . . . In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve. The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both . . . . Once the court decides that a reasonable inference of guilt may be drawn from the circumstances, then, it is for the jury to decide whether the facts, taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty.

Both competent and incompetent evidence must be considered. In addition, the defendant's evidence should be disregarded unless it is favorable to the State or does not conflict with the State's evidence. The defendant's evidence that does not conflict may be used to explain or clarify the evidence offered by the State. When ruling on a motion to dismiss, the trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence.

*State v. Fritsch,* 351 N.C. 373, 378-79, 526 S.E.2d 451, 455-56 (citations, quotation marks, and brackets omitted), *cert. denied,* 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Turnage,* 362 N.C. 491, 493, 666 S.E.2d 753, 755 (2008). We consider each of the charges against defendant in turn.

1. Robbery with a Dangerous Weapon

On appeal, defendant does not challenge that a robbery with a dangerous weapon occurred. Robbery with a dangerous weapon under N.C. Gen. Stat. § 14-87 is committed by:

[a]ny person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time either day or night, or who aids or abets any such person or persons in the commission of such crime . . .

N.C. Gen. Stat. § 14-87 (2007). Our Supreme Court has identified the essential elements of this crime as, "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened." *State v. Haselden,* 357 N.C. 1, 17, 577 S.E.2d 594, 605. The State presented evidence that Mr. Taylor had money stolen at gunpoint and that, during that interaction, his assailant threatened to shoot him, satisfying the essential elements of the crime.

Defendant challenges whether the State submitted substantial evidence as to defendant's identity as the perpetrator of the offense. We therefore examine the evidence as to defendant's identity. The evi-

dence at trial showed, *inter alia* that: Mr. Taylor identified the voice of his assailant as that of defendant. Mr. Taylor was familiar with defendant's voice because he had known defendant for twelve to fifteen years. Mr. Taylor told his father immediately following the attack that he recognized the voice of defendant as that of his assailant. Mr. Taylor identified his assailant as being a black male with a lazy eye like that of defendant. In all of Mr. Taylor's statements to police and interactions with his family, he exhibited a consistently high level of certainty regarding his identification of defendant as his assailant.

Given the longstanding relationship between Mr. Taylor and defendant as well as the steadfastness and consistency of Mr. Taylor's identification of defendant, a "reasonable mind might accept as adequate," *Turnage,* 362 N.C. at 493, 666 S.E.2d at 755, Mr. Taylor's identification of defendant as Mr. Taylor's assailant. Because the State satisfied the legal standard for the presentation of substantial evidence that defendant was the perpetrator of the crime, defendant's motion to dismiss as to the charge of robbery with a dangerous weapon was properly denied.

## 2. Conspiracy to Commit Robbery with a Dangerous Weapon

Defendant likewise argues that the charge of conspiracy should have been dismissed. The State's successful assertion of a charge of criminal conspiracy requires proof of "an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner. The State need not prove an express agreement. Evidence tending to establish a mutual, implied understanding will suffice to withstand a defendant's motion to dismiss." *State v. Wiggins,* 185 N.C. App. 376, 389, 648 S.E.2d 865, 874 (citations omitted), *disc. review denied,* 361 N.C. 703, 653 S.E.2d 160 (2007).

Taking all evidence in the light most favorable to the State, the State's evidence tended to show that defendant was driven by a second man to intercept Mr. Taylor. Defendant was wearing a ski mask and in possession of a gun. The second individual assaulted Mr. Taylor and took the money from Mr. Taylor when defendant hesitated in the commission of the robbery. The two men then got into the same car and drove away. Mr. Taylor's testimony regarding defendant and the driver of the Lincoln acting together to rob him in this way is "evidence tending to establish a mutual, implied understanding" between defendant and the driver to rob Mr. Taylor and did, therefore, properly "suffice to withstand [this] defendant's motion to dismiss." *Id.*

Therefore, we find no error in the trial court's denial of defendant's motion to dismiss on the charge of conspiracy.

## C. Ineffective Assistance of Counsel

**[4]** Finally, defendant argues that he was deprived of his Sixth Amendment right to counsel by virtue of his trial attorney's failure to object to the admission of his video statement. A claim of ineffective assistance of counsel, to be successful, requires proof: (1) "that the professional assistance that defendant received was unreasonable" and (2) "the trial would have had a different outcome in the absence of such assistance." *State v. Fair*, 354 N.C. 131, 167, 557 S.E.2d 500, 525 (2001) (citations omitted).

Claims for ineffective assistance of counsel "brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be brought without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *Id. at* 166, 557 S.E.2d at 525. Claims which are not properly asserted on direct appeal are properly dismissed without prejudice to defendant's right to reassert them during a subsequent proceeding on a motion for appropriate relief. *Id.* at 167, 557 S.E.2d at 526.

In the present case, the video statement in question was introduced in rebuttal because of the testimony of defendant. As discussed above, even if defendant's counsel had objected to admission of the video or to the various portions of testimony within the video which defendant argues should not have been admitted, the trial court would have properly overruled the objections because defendant had opened the door to this evidence by his testimony. Thus, defendant has not demonstrated that "the trial would have had a different outcome in the absence of such assistance." *Id.*

The record also demonstrates that the matters of which defendant complains were matters of trial strategy. Defendant's decision to testify and the content of that testimony led to the admission of the evidence which is the subject of defendant's arguments for ineffective assistance of counsel. Defendant has not argued that his counsel failed to advise him properly regarding his right to remain silent, that he did not understand the ramifications of his decision to testify, or that his trial counsel improperly presented his defense. Defendant's decision to testify, the defenses he asserted, and the manner in which he asserted them were matters of trial strategy, and "[d]ecisions

concerning which defenses to pursue are matters of trial strategy and are not generally second-guessed by this Court." *State v. Prevatte*, 356 N.C. 178, 236, 570 S.E.2d 440, 472 (2002). Defendant's counsel's trial strategy is clearly outlined in her closing argument. Defendant's reason for his decision to testify was to establish his alibi defense; defendant claimed that he was at work on the day when the robbery occurred, and defendant's counsel "brought in everyone that I thought that you would need to walk [defendant] though his day and to explain where he was." Defendant's counsel also stressed the fact that defendant had emphatically denied robbing Mr. Taylor ever since he was first questioned, including references to defendant's video-taped interview. As the jury did not believe defendant's alibi evidence, defendant may in hindsight now question this trial strategy, but he has not challenged it on appeal and he has failed to overcome the presumption that his counsel's trial strategy was "within the boundaries of acceptable professional conduct." *State v. Roache*, 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004) ("Moreover, this Court engages in a presumption that trial counsel's representation is within the boundaries of acceptable professional conduct." As the United States Supreme Court has stated,

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .

*Strickland v. Washington*, 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694 (1984). Therefore, defendant has failed to demonstrate ineffective assistance of counsel based upon the record before us.

Defendant requests in the alternative that we dismiss his claims for ineffective assistance of counsel without prejudice to defendant's right to reassert this claim in a motion for appropriate relief because the record on appeal is insufficient for us to make this determination. *See State v. Fair*, 354 N.C. 131, 167, 557 S.E.2d 500, 525 (2001). However, defendant has failed to make any argument as to what sort of evidentiary record may be needed to make this determination or how the record before us is deficient. All of defendant's arguments as to ineffective assistance of counsel are based upon his counsel's

failure to object to the videotape of his interview or to particular evidence in the interview; all of the information is in the record before us. Based upon defendant's asserted grounds for his claim of ineffective assistance of counsel, we see no need for additional proceedings before the trial court. Therefore, defendant's claim for ineffective assistance of counsel is without merit.

### III. CONCLUSION

For the foregoing reasons, we hold that the trial court committed no error as to the admission of the video evidence complained of and no error as to the denial of defendant's motions to dismiss. Defendant's claim for ineffective assistance of counsel is without merit and is dismissed.

NO ERROR.

Judges McGEE and ERVIN concur.